ARKANSAS BLUE CROSS and BLUE SHIELD,
A Mutual Insurance Company *v.*
Ollie HICKS and Higine Hicks

01–916                                            78 S.W.3d 58

Supreme Court of Arkansas
Opinion delivered June 13, 2002

Horne, Hollingsworth & Parker, A Professional Association, by: Allan W. Horne and Mark H. Allison, for appellant.

Jackson & Foster, L.L.C., by: Sidney W. Jackson, III; Raymond Abramson; and Turbeville Law Firm, by: Richard Turbeville, for appellee.

D ONALD L. CORBIN, Justice. This appeal presents the issue whether a trial court properly certified a suit as a class action pursuant to the requirements set forth in Ark. R. Civ. P. 23. Appellant Arkansas Blue Cross and Blue Shield appeals the order of the Monroe County Chancery Court certifying the suit filed by Appellee Ollie Hicks, as wife and next friend of Higine Hicks, and Appellee Higine Hicks as a class action. Appellant raises several arguments on appeal as to why the present action was improperly certified. This case was transferred to us from the court of appeals; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(d). We find no error and affirm.

The record reflects that Higine purchased a Medicare Supplement Policy, also known as a Medi-Pak policy, from Appellant on June 26, 1996, with the policy having an effective date of August 1, 1996. At the time that Hicks purchased the supplemental policy, he was also receiving Medicaid benefits. Appellant, when selling the Medi-Pak policy to Hicks, did not specifically inquire as to whether or not Hicks was eligible for or receiving

Medicaid benefits. The Medi–Pak application did, however, ask whether the applicant had any other insurance coverage that provided benefits similar to the Medi–Pak policy. Higine answered the inquiry affirmatively and listed Medicaid as the other insurance providing similar coverage. At the end of the application was a section preceded by "IMPORTANT: PLEASE READ AND SIGN" that contained information informing the applicant that he may be eligible for Medicaid and may not need a Medicare supplement policy. It further advised the applicant that the supplemental policy could be suspended if the applicant later became entitled to Medicaid benefits.

Thereafter, Appellees filed suit against Appellant alleging that its practice of selling supplemental insurance policies to Medicaid-eligible beneficiaries violated the Arkansas Deceptive Trade Practices Act ("ADTPA"), constituted a breach of contract, and their collection of premiums constituted a conversion. The original complaint filed on April 2, 1999, alleged that Appellees were suing on their behalf, as well as all members of a class "consisting of all persons in the State of Arkansas who: (1) at any time purchased a Medicare Supplement Policy from Blue Cross and Blue Shield of Arkansas while enrolled as a Qualified Medicaid Beneficiary; and (2) paid premiums on such policy while enrolled as a Qualified Medicaid Beneficiary, at any time between August 1, 1996, and the date of Notice to the Class."

Appellant filed an answer to the complaint, admitting that it may have sold supplemental policies to Arkansas residents who were entitled to, or later became entitled to, Medicaid benefits. Appellant contended, however, that there was a conflict between two federal provisions governing insurers in cases regarding Medicaid. Its answer further claimed that prior to 1996, its applications inquired as to whether or not an applicant was covered by Medicaid, but that in November 1995, the Arkansas Insurance Department ("AID") advised Appellant that under federal law, it could no longer take into account that an applicant for supplemental insurance was eligible for, or receiving, Medicaid benefits. Thereafter, Appellant removed the Medicaid question from its applications. AID subsequently learned that its directive to Appellant was erroneous and reinstated its requirement that insurers include the

Medicaid question on its applications. According to Appellant's answer, however, AID did not inform it of this change until late 1996. Finally, Appellant's answer denied that a class action was appropriate, averring that the allegations in Appellees' complaint required individual determinations and that Higine Hicks could not adequately represent the interests of the class, as he was suffering from a weakened mental and physical state, was seventy years of age, and ignorant on insurance matters and uneducated.

Appellees also filed a motion seeking conditional class certification, alleging therein that a class action was a superior method for handling their cause of action and that all of the requirements of Rule 23 had been met. In connection with the motion for class certification, Appellees submitted various exhibits and affidavits in an effort to support their contention that a class action was a superior method for litigating their claims. Included in these documents was an affidavit of Ollie that her husband was enrolled in Arkansas's Medicaid program on September 17, 1993, and was on Medicaid at the time that he applied for and received the Medi-Pak insurance. According to Ollie, her husband purchased the supplemental policy despite her advice to him that he did not need extra insurance since he was covered by both Medicare and Medicaid. She learned that her husband had purchased a Medi-Pak policy only after receiving a bill from Appellant. She stated that she attempted to contact Appellant and inquire as to why her husband was paying for insurance, but claimed that the person whom she called would not answer her question.

Appellees also submitted a transcript from the deposition of Ron DeBerry, Director of Marketing for Appellant. In his deposition, DeBerry explained the methods utilized by Appellant in marketing and selling its Medi-Pak policies. DeBerry stated that the policies were predominantly sold through direct-response advertising, specifically in newspapers and television commercials, and telemarketing. DeBerry stated that the company did not make cold calls, but instead followed up on written leads or leads phoned into the company. DeBerry also testified that individuals on Medicaid are not eligible for Medi-Pak, but admitted that there was no written manual instructing telemarketers on how to handle specific Medicaid questions. Finally, DeBerry stated that Appel-

lant has the ability to produce a computer disc containing the social security numbers of each of its Medi-Pak customers that could in turn be given to Arkansas Medicaid in order to perform a cross-reference to determine how many Medicaid recipients had purchased Medi-Pak policies.

Joseph Smith, Vice President of Private Programs and Chief Information Officer for Appellant, was deposed and testified that he was responsible for overseeing Appellant's claims, which were handled almost exclusively electronically. Smith stated that typically the only way a claims' representative would know that a claimant was Medicaid eligible was if they received a telephone call from the individual consumer alerting them to their dual coverage. According to Smith, once Appellant learned of a person's Medicaid coverage, they would verify that information and suspend the Medi-Pak policy if notification was made within a ninety-day time period. The premium would then be refunded from the date of notice, rather than the date the claimant became Medicaid eligible. If the customer called after the ninety-day time period, there was no premium refund. Smith also stated that the claims department could become aware of Medicaid coverage if a claim was returned from Medicaid.

Harris Shearer, a policy analyst with AID, filed an affidavit stating that the sale of Medi-Pak insurance to persons already on Medicaid is prohibited, because Medicaid typically pays for expenses covered by Medi-Pak. Thus, there is a requirement that an insurer ask persons applying for Medi-Pak coverage whether they are eligible for Medicaid. According to Shearer, in 1995, the AID was informed that insurers could no longer consider an applicant's Medicaid status in determining whether to issue Medi-Pak coverage. In November 1995, Appellant submitted its proposed Medi-Pak application for the year 1996, and Shearer instructed Appellant to remove the question "Are you covered by Medicaid?" as a result of the previous information. A new application form was then approved by Shearer in January 1996. Later in 1996, AID learned that insurers should continue to ask about an applicant's Medicaid eligibility, but Shearer did not inform Appellant of this change until after it submitted its proposed application for 1997.

The affidavit of Wayne Olive, Director of the Third Party Liability Unit of the Arkansas Medicaid Program, was also submitted by Appellees in support of their motion for class certification. Therein, he discussed the details of Medicaid coverage, including the fact that a person may move in and out of Medicaid eligibility from month to month, depending on the person's income and assets. Olive stated that during the initial Medicaid enrollment process, an applicant is asked whether he or she has any other health insurance. Any such insurance is recorded, and if a claim is submitted to Medicaid for which there is other health insurance, the Medicaid system will deny that claim until the provider seeks payment from the insurer. According to Olive, the Medicaid system did not have the capability to independently determine the number of Medicaid recipients who have Medi-Pak coverage, unless the insurance carrier engages in a data match of files or shares data. Finally, he stated that his statement in a previous affidavit that 4,174 persons with Medicaid benefits and Medi-Pak coverage through Appellant was not edited to reflect whether those persons were presently eligible for Medicaid or whether the Medi-Pak coverage was current, terminated, or suspended.

Appellant filed a motion seeking to transfer this action from circuit to chancery court, because it claimed that the action was one for recission and was thus cognizable only in chancery court. The circuit court subsequently entered an order transferring the case to the chancery division as one involving equitable issues and relief. Appellant also filed a motion to dismiss, or in the alternative, a motion for summary judgment. In a letter order dated November 13, 2000, the chancellor granted Appellant's motion to dismiss with regard to Appellees' claim under the ADTPA, because the Act does not apply to transactions permitted under laws administered by AID. The chancellor also dismissed Appellees' claim regarding those persons who became eligible for Medicaid benefits after they purchased a Medi-Pak policy but continued paying premiums to Appellant. The chancellor concluded, however, that there were issues of fact and law to be resolved in the case and that it was necessary to hold another hearing on the issue of Appellees' motion for class certification.

Appellees subsequently filed a second amended complaint on November 29, 2000, alleging therein breach of contract, fraud, and constructive-trust disgorgement and unjust enrichment. Specifically, Appellees alleged that Appellant engaged in a course of conduct in selling insurance to persons and accepting their premiums where Appellant knew or should have known that they could not perform under the contract, thus rendering the contracts voidable. Appellees also averred that Appellant fraudulently informed, or failed to inform, Appellees and the class that if they were entitled to Medicaid benefits, the supplemental policy duplicated these benefits. Finally, Appellees claimed that Appellant occupied a confidential relationship with Appellees, and breached this trust through the sale of unnecessary insurance; thus, Appellant should disgorge all profits derived from this trust.

A hearing on the issue of class certification was held on November 30, 2000. The chancellor took the matter under advisement and later issued findings of fact and conclusions of law as to the issue of class certification in an order dated May 1, 2001. After considering the pleadings, affidavits, documentary evidence, testimony of witnesses, and the oral argument of counsel at three separate hearings, the chancellor concluded that the proposed class satisfied all the requirements of Rule 23 and certified the class as all persons in the State of Arkansas who:

> (1) at any time purchased a Medicare Supplement Policy from Blue Cross and Blue Shield of Arkansas while enrolled as a Qualified Medicare Beneficiary; or
>
> (2) paid premiums on such policy while enrolled as a Qualified Medicare Beneficiary, at any time between August 1, 1994 and the date of Notice to the Class (the "Class Period").

From that order, comes the instant appeal.

Rule 23 (a) and (b) sets forth the prerequisites for certifying a class action. Rule 23 reads in pertinent part:

> (a) *Prerequisites to Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties

are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

■ ■ Before turning to an analysis of the above-stated requirements, we first reiterate our well-settled position that we will not reverse a trial court's ruling on class certification absent an abuse of discretion. *See, e.g., Ferguson v. Kroger Co.*, 343 Ark. 627, 37 S.W.3d 590 (2001); *BPS, Inc. v. Richardson*, 341 Ark. 834, 20 S.W.3d 403 (2000); *Fraley v. Williams Ford Tractor & Equip. Co.*, 339 Ark. 322, 5 S.W.3d 423 (1999); *Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 954 S.W.2d 898 (1997). Moreover, in reviewing a trial court's order on class certification, this court focuses on the evidence in the record to determine whether it supports the trial court's conclusion regarding certification. *Id.* In this same vein, this court has noted its refusal to consider the merits of the underlying claim, stating:

> We have held that neither the trial court nor the appellate court may delve into the merits of the underlying claim in determining whether the elements of Rule 23 have been satisfied. In that regard, a trial court may not consider whether the plaintiffs will ultimately prevail, or even whether they have a cause of action. Thus, the propriety of a class action is "basically a procedural question.

*Fraley*, 339 Ark. at 335, 5 S.W.3d at 431 (citations omitted). Remaining mindful of these principles, we now turn to the class certification at hand.

### Class Definition

For its first point on appeal, Appellant argues that the class definition is imprecise, and it will not be administratively feasible to identify the class members. Appellant avers that the definition

is imprecise because of the use of the disjunctive "or" between subsections (1) and (2) of the class definition. According to Appellant, the chancellor's findings of fact stated that it is permissible for a person with existing Medi-Pak coverage to keep that policy in force by continuing to pay premiums even if that person later becomes eligible for Medicaid. Thus, the use of "or" renders the class definition inconsistent with the court's findings. Moreover, Appellant argues that the class as defined will include possibly thousands of people who became eligible for Medicaid after purchasing Medi-Pak insurance and that those people share no common experience with the class representatives.

■ In *Ferguson*, 343 Ark. 627, 37 S.W.3d 590, the appellants argued on appeal that it was error for the trial court to deny class certification in an action by grocery shoppers against the Kroger Company for negligence, breach of contract, unjust enrichment, misrepresentation, and conversion stemming from a dispute over the grocer's double-coupon program. The trial court denied class certification after concluding that individual issues dominated over common ones and that a class action was not a superior method for handling the litigation. In affirming the trial court, this court did so for a reason other than that stated by the trial court. On appeal, Kroger asserted that it was virtually impossible to identify members of the proposed class and, thus, impossible to define the class. This court agreed. In concluding that a defined class did not exist, this court stated:

> It is axiomatic that in order for a class action to be certified, a class must exist. The definition of the class to be certified must first meet a standard that is not explicit in the text of Rule 23, that the class be susceptible to precise definition. This is to ensure that the class is neither "amorphous," nor "imprecise." Concurrently, the class representatives must be members of that class. Thus, before a class can be certified under Rule 23, the class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class. Furthermore, for a class to be sufficiently defined, the identity of the class members must be ascertainable by reference to objective criteria.

*Id.* at 631–32, 37 S.W.3d at 593 (quoting 5 Jeremy C. Moore, *Moore's Federal Practice* § 23.2(1) (Matthew Bender 3d ed. 1997)).

■ The court in *Ferguson* ultimately held that in order to maintain a class action, there must be a defined class that will make it administratively feasible for a court to determine membership in the class. In other words, class identity must be feasible, and the class cannot be excessively broad or amorphous. *Id.* (citing 7A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure* § 1760 (2d ed. 1986)). As this court in *Ferguson* pointed out, clearly defining the class insures that those people who are actually harmed by the defendant's wrongful conduct will participate in the relief ultimately awarded. *Id.* (citing *Simer v. Rios*, 661 F.2d 655 (7th Cir. 1981)).

■ In the present case, we disagree with Appellant's assertion that the class is rendered unidentifiable by the use of "or" in the class definition. Appellant's claim that the use of "or" in the class definition is inappropriate ignores a critical factor. In her order dated January 29, 2001, the chancellor dismissed that part of Appellees' complaint dealing with those persons who became Medicaid eligible after they purchased a Medi–Pak policy. The chancellor specifically determined that under the law, a person who becomes Medicaid eligible after purchasing a Medi–Pak policy bears the burden of suspending the Medi–Pak coverage. The chancellor also pointed out that there had been no allegations that Appellant ever failed to comply with an individual's request to suspend Medi–Pak coverage. Thus, Appellant's argument on this point is unavailing.

We also disagree with Appellant's assertion that it will not be administratively feasible to identify class members. Appellant asserts that even if the parties have the capability to identify every Arkansan who purchased a Medi–Pak policy or who paid premiums on such a policy after August 1, 1994, no one possesses information regarding when and for how long a person was covered by Medicaid as a Qualified Medicare Beneficiary ("QMB"). According to Appellant, this issue is made more complex by the fact that a person's Medicaid status can change from month to month. Appellant relies on this court's decision in *Ferguson*, but that case is

distinguishable. In *Ferguson*, this court acknowledged that the ability to identify the class members was "made more difficult by the passage of time and changes in the shoppers' circumstances." *Id.* at 634, 37 S.W.3d at 594. No such situation is at issue in this case.

■ Here, Appellees presented evidence that established possible ways to identify those persons falling within the class definition. DeBerry testified that it was possible for Appellant to create a computer disk containing the Social Security numbers of each of its Medi-Pak customers that could then be cross-referenced with the social security numbers of Medicaid recipients to determine which Medicaid recipients had purchased Medi-Pak policies. Olive also testified that it would be possible to determine the identity of potential class members through sharing computer data. In sum, we believe there are adequate methods in place to aid in determining the identity of potential class members. Moreover, the class definition is sufficiently specific to prevent the class from becoming too unwieldy. Accordingly, we cannot say that the chancellor abused her discretion in defining the present class.

## Adequacy of Representation

Next, Appellant argues that Appellees are not proper class representatives. Specifically, Appellant argues that there was no finding that Higine was enrolled as a QMB or that he met the asset criteria for a QMB at the time that he applied for the Medi-Pak policy. Appellant claims that whether the class consists of QMB's and whether Higine was a QMB is a critical issue, because federal law permits the sale of certain types of Medi-Pak policies to QMB's. Moreover, Appellant claims that Higine has no standing to represent those persons falling within subsection (2) as he did not become eligible for Medicaid after purchasing the policy, nor ever requested that Appellant suspend his policy due to his Medicaid eligibility.

■ Appellees counter that Appellant never raised this issue below, and as such, this court should not consider it for the first time on appeal. In its reply brief to this court, Appellant asserts that it never raised the specific QMB issue, because throughout

this litigation, Appellees repeatedly framed the issue in terms of whether Higine was "Medicaid eligible." This court has often stated that an argument that was never raised below will not be considered for the first time on appeal. *Ghegan & Ghegan, Inc. v. Barclay*, 345 Ark. 514, 49 S.W.3d 652 (2001); *Qualls v. White*, 342 Ark. 681, 30 S.W.3d 735 (2000). Accordingly, we do not address the merits of Appellant's argument regarding Higine's status as a QMB.

█ In fact, the record before us reveals that Appellant's only challenge to Higine's representation was based on a contention that he was an unsuitable class representative due to his age, lack of education, and lack of knowledge in the area of insurance practices. An attack on the adequacy of class representation under this theory also fails. Rule 23(a)(4) states that a trial court must determine whether the class representatives "will fairly and adequately protect the interests of the class." In *BPS, Inc.*, 341 Ark. 834, 20 S.W.3d 403, this court explained the three elements of this requirement, stating that:

> (1) the representative counsel must be qualified, experienced and generally able to conduct the litigation; (2) there be no evidence of collusion or conflicting interest between the representative and the class; and (3) the representative must display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation.

*Id.* at 844, 20 S.W.2d at 407–08 (citing *Mega Life*, 330 Ark. at 275, 954 S.W.2d at 904). Absent a showing to the contrary, this court will presume that the representative's attorney will vigorously and competently pursue the litigation. *Mega Life*, 330 Ark. 261, 954 S.W.2d 898.

█ Here, according to Ollie, her husband Higine had been in a nursing home since the fall of 1997, his mind was wavering, and it did not appear that he was coming home. She testified that she completed the 7th grade, but later took some additional classes at Carver High School. In her affidavit, Ollie also stated that she was willing to participate in the litigation of this case by attending hearings and depositions and helping to make decisions in an

effort to help other poor families recover monies spent on unnecessary insurance. The chancellor pointed out that Ollie had instructed her counsel to keep in contact with her and to let her know what was going on. We agree with the chancellor that this instruction, coupled with Ollie's appearance at each scheduled hearing, was enough to demonstrate Ollie's requisite interest in these proceedings. As this court previously held, the "adequacy of representation" element is satisfied if the representatives display a minimal level of interest in the action, familiarity with the challenged practices, and ability to assist in litigation decisions. *See Cheqnet Sys., Inc. v. Montgomery*, 322 Ark. 742, 911 S.W.2d 956 (1995). Moreover, there was no challenge to Appellee's counsel's ability to conduct this litigation. Accordingly, the chancellor did not abuse her discretion on this point.

### Commonality and Predominance

For its third point on appeal, Appellant argues that it was error for the trial court to grant class certification because common issues do not predominate over individual issues. Specifically, Appellant avers that the elements required to be proven in order to sustain Appellees' claims for fraud demonstrate that there are important individual issues to be decided. Appellees disagree and assert that the common questions of law and fact related to Appellant and its course of conduct in selling supplemental insurance is analogous to the situation in *Mega Life*, 330 Ark. 261, 954 S.W.2d 898.

Pursuant to Rule 23(a)(2), the trial court must determine that "there are questions of law or fact common to the class." In *Williamson v. Sanofi Winthrop Pharms., Inc.*, 347 Ark. 89, 60 S.W.3d 428 (2001), this court discussed the commonality issue:

> [T]he common question prerequisite is interdependent with the notion of joinder impracticability under Rule 23(a)(1). Consideration of the common question issue requires an answer to the question: Common to whom?"

* * *

Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common. The test or standard for meeting the rule 23(a)(2) prerequisite is . . . that is there need be only a single issue common to all members of the class. . . .When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected.

*Id.* at 96, 60 S.W.3d at 432 (quoting Herbert B. Newberg, *Newberg on Class Actions* § 3.10 (3d ed. 1993)).

In *Mega Life*, the case relied on by Appellees, this court affirmed an order certifying a class of persons who sought a declaration that group insurance policies sold to them by agents of Mega Life were void, because Mega Life failed to comply with the applicable insurance regulations in issuing its policies. In affirming the class certification, this court held that the plaintiffs had satisfied the requirement that common claims regarding identical policies predominated over any individual issues. The court stated that "[i]f these issues are resolved in favor of the class, the individual members will have suffered a common injury of paying premiums for a void insurance policy." *Id.* at 271, 954 S.W.2d at 902.

The trial court in the present matter determined that the following were common questions of law or fact:

I. whether Defendant has engaged and is engaging in the unlawful, negligent, and/or misleading conduct of selling Medipak coverage to persons eligible for Medicaid and/or collecting premiums from such persons;

II. whether the Defendant suppressed material facts in dealings with Plaintiff and Class;

III. whether the Defendant was unjustly and substantially enriched as a result of their wrongful conduct;

IV. whether Plaintiff and the members of the Class were impoverished and suffered damages as a result of the conduct alleged herein, and if so, the measures of such damages;

V. whether the acts and conduct of Defendant violated state and common law; and,

VI.  whether injunctive relief is appropriate and, if so, what form of injunctive relief is most appropriate.

The chancellor further recognized that individual issues, such as questions regarding the completion of the applications or whether applicants read the disclosures on the applications, may arise but that such questions did not predominate over common issues.

██ ██  This court has repeatedly recognized that conducting a trial on the common issue in a representative fashion can achieve judicial efficiency. *See Summons v. Missouri Pac. R.R.*, 306 Ark. 116, 813 S.W.2d 240 (1991); *International Union of Elect., Radio & Mach. Workers v. Hudson*, 295 Ark. 107, 747 S.W.2d 81 (1988). Moreover, this court has routinely found the bifurcated process of class actions to be consistent with Rule 23(d), which allows the trial court to enter orders necessary for the appropriate management of the class action. *Mega Life*, 330 Ark. 261, 954 S.W.2d 898; *Hudson*, 295 Ark. 107, 747 S.W.2d 81. In fact, this court has expressed its approval for the bifurcated approach to the predominance element by allowing trial courts to divide the case into two phases: (1) certification for resolution of the preliminary, common issues; and (2) decertification for the resolution of the individual issues. *Mega Life*, 330 Ark. 261, 954 S.W.2d 898. The bifurcated approach has only been disallowed where the preliminary issues to be resolved were individual issues rather than common ones. *See Arthur v. Zearley*, 320 Ark. 273, 895 S.W.2d 928 (1995).

██  Here, the common issue that predominates any other potential issue is whether Appellant engaged in a fraudulent scheme to sell insurance policies that they knew, or should have known, were voidable because they provided coverage that was already being provided by Medicaid. If this issue is resolved in favor of the class, the individual members will have suffered a common injury of having paid insurance premiums on a void policy. The chancellor was correct in stating that any individual issues that may arise could later be resolved after a determination of the common issue.

## Numerosity and Superiority

For its final argument on appeal, Appellant alleges that the potential class is not so large as to render joinder impracticable and that certification is not a superior method of adjudicating these claims. Appellees argue that joinder is impracticable as the class may number in the thousands and that certification is the superior method of disposing of these claims in an effort to avoid numerous small lawsuits. We agree with Appellees.

■■■ This court discussed the numerosity requirement in *BPS, Inc.*, 341 Ark. 834, 842, 20 S.W.3d 403, 406:

> The first requirement of class certification is "that the class is so numerous that joinder of all members is impractical." Ark. R. Civ. P. 23(a)(1). In *Cheqnet Systems, Inc. v. Montgomery*, 322 Ark. 742, 911 S.W.2d 956 (1995), we held that the exact size of the proposed class and the identity of the class members need not be established for the court to certify a class, and the numerosity requirement may be supported by common sense. We have not adopted a bright-line rule to determine how many class members are required to satisfy the numerosity requirement. *Mega Life, supra* (citing *Summons v. Missouri Pac. R.R.*, 306 Ark. 116, 813 S.W.2d 240 (1991) (approving a class of several thousand claimants)); *International Union of Elec., Radio, & Mach. Workers v. Hudson*, 295 Ark. 107, 747 S.W.2d 81 (1988) (declaring that "at least several hundred" class members were sufficient); *Cooper Communities, Inc. v. Sarver*, 288 Ark. 6, 701 S.W.2d 364 (1986) (holding that 184 potential class members were enough); *City of North Little Rock v. Vogelgesang*, 273 Ark. 390, 619 S.W.2d 652 (1981) (rejecting a class of only seventeen potential plaintiffs)).

■■■ In this case, Appellees presented proof that the Medicaid program database reflected that approximately 4,174 persons who were eligible for Medicaid were at some point covered by a Medi-Pak policy. Appellant also presented the testimony of DeBerry at the December 10 certification hearing in circuit court. Therein, DeBerry stated that Appellant conducted a survey of 19,500 Medi-Pak applications submitted in 1995 and 1996 to determine how many people indicated they had Medicaid and then how many people were actually issued a Medi-Pak policy. According to DeBerry, 175 applicants indicated they had Medi-

caid in 1995, and 141 of those applications were denied or were never completely processed. In 1996, there were 79 applicants who indicated that they had Medicaid coverage, and while 49 of those applications were approved, only 31 people still have Medi-Pak coverage. Based on this evidence, the chancellor reasoned that the class would range from 77 to 4,000 persons and thus, was sufficiently numerous. We agree with the chancellor. Appellant's own evidence regarding the minimum number of potential class members supports a conclusion that the numerosity requirement had been satisfied.

Within their argument regarding the issue whether the pre-requisite for numerosity has been met, Appellant also avers that a class action is not the superior method for resolving this case. Appellant's argument on this point is premised on the notion that there will be few claimants and that the more efficient way of handling their claims would be through joinder or individual trials. Appellant's argument on this point is not based on any evidence, and thus we cannot agree that a class action is inappropriate here. Appellant also bases this argument on the notion that individual issues predominate over common ones, a notion already rejected by this court.

Rule 23(b) requires that a class action be superior to other available methods for the fair and efficient adjudication of the controversy. See *Williamson*, 347 Ark. 89, 60 S.W.3d 428. This court has held that the superiority requirement is satisfied if class certification is the more "efficient" way of handling the case, and it is fair to both sides. *Id*. Where a cohesive and manageable class exists, we have held that real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary. *Id*. This court has further stated that when a trial court is determining whether class-action status is the superior method for adjudication of a matter, it may be necessary for the trial court to evaluate the manageability of the class. See *BNL*, 340 Ark. 351, 10 S.W.2d 838.

In her order, the chancellor concluded that a trial on the common questions was manageable and, in fact, superior to

numerous small lawsuits that might occur in the absence of class certification. As previously stated, the fact that individual issues may arise does not render class certification a less favorable means for conducting litigation. Moreover, we are mindful of a point previously made by this court in *Summons*, 306 Ark. 116, 128, 813 S.W.2d 240, 246, when discussing the importance of reviewing a trial court's order regarding certification. There, we stated:

> That is especially so when it is possible that a large number of persons who *may* have legitimate claims not worth pursuing because of the costs of our system of justice may lose those claims if they are not allowed to proceed together as a class. By not certifying a class, a trial court can cause the problem to "go away" to the extreme disadvantage of the claimants unless that decision is reviewable.

This concern that a case could just "go away" is certainly applicable in this action. Here, we are dealing with elderly, low-income persons who may lack knowledge regarding insurance coverage. If they are not allowed to proceed as a class, many, if not most, of those potential class members will either lack the knowledge or the financial means to proceed against Appellant in individual actions. While this standing alone is not enough to justify class certification, it is a compelling reason to approve a class certification where all of the other requirements of Rule 23 have been satisfied.

In sum, it is clear that the chancellor did not err in granting Appellees' motion for class certification, as each of the prerequisites of Rule 23 have been satisfied. Accordingly, we affirm.

MIKE RAINWATER, Spl. J., joins in this opinion.

IMBER, J., concurs.

THORNTON, J., dissents.

GLAZE, J., not participating.

ANNABELLE CLINTON IMBER, Justice, concurring. I agree with the majority's decision, and write separately only to clarify that the Appellees in this case are not required to produce a list identifying all members of the class. As the majority

recognizes, the class description must only be definite enough so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class. *See Ferguson v. Kroger Co.*, 343 Ark. 627, 37 S.W.3d 590 (2001). *See also Fabricant v. Sears Roebuck*, 202 F.R.D. 306 (S.D. Fla. 2001); *Mueller v. CBS, Inc.*, 200 F.R.D. 227 (W.D. Pa. 2001); 5 James Moore, *Moore's Federal Practice* § 23.21[1] (3d ed. 1997).

More precisely, it is generally recognized that the definition of a class need not be so specific that every potential member must be identifiable at the outset of the action. *See Cherokee Nation of Okla. v. United States*, 199 F.R.D. 357 (E.D. Okla. 2001); *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311 (C.D. Cal. 1998); *Joseph v. General Motors Corp.*, 109 F.R.D. 635 (D. Colo. 1986); *In re Tetracycline Cases*, 107 F.R.D. 719 (W.D. Mo. 1985); 5 James Moore, *Moore's Federal Practice*, § 23.21[2] (3d ed. 1997); 7A Charles Alan Wright et al., *Federal Practice & Procedure* § 1760 (2d ed. 1986). A party seeking class certification is not required to state the exact number of members of the proposed class or to specifically identify each class member. 5 James Moore, *Moore's Federal Practice*, § 23.22[3][b] (3d ed. 1997). Rather, the identity of class members must be readily ascertainable by reference to objective criteria such that the court can determine whether a person is a member of the class. *Ferguson v. Kroger Co., supra. See also Garrish v. United Auto., Aerospace, And Agric. Implement Workers of Am.*, 149 F. Supp. 2d 326 (E.D. Mich. 2001); *Fabricant v. Sears Roebuck, supra.* Thus, the class definition in this case is sufficiently precise and objective so that it will be administratively feasible for the trial court to ascertain whether an individual is a member of the class.

RAY THORNTON, Justice, dissenting. I respectfully dissent from today's decision in which this court approves a defective class certification and allows it to proceed as a class action. Our court has previously departed from the standard applied in federal rules, as adopted in most other jurisdictions, by our decision in *Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 954 S.W.2d 898 (1997), where we held that a rigorous analysis is not required for certification of a class in Arkansas. *Id.*

Today we expand that liberal interpretation of class actions in Arkansas to allow this appellate court to make surgical repairs to an order establishing an imprecise, amorphous, and excessively broad class composed of members whose Medicaid status may change from month to month, thereby making it unfeasible to identify members of the proposed class at any given time.

On May 1, 2001, the trial court entered its order, certifying the class consisting of all persons in the State of Arkansas who:

> (1) at any time purchased a Medicare Supplement Policy from Blue Cross and Blue Shield of Arkansas while enrolled as a Qualified Medicare Beneficiary, *or*
>
> (2) paid premiums on such policy while enrolled as a Qualified Medicare Beneficiary *at any time between August 1, 1994 and the date of Notice to the Class* (the "Class Period").

(Emphasis added.)

In its order, the trial court found that the number of members of the class is disputed, but ranges between seventy-seven to 4,174 persons. The trial court notes that Wayne Olive states in his affidavit that he has identified "some 4,174 Medicaid recipients for whom Medicaid received a report of Medipak coverage through Blue Cross and Blue Shield of Arkansas [BCBSA]."

The trial court then finds "that even though the size of the class is uncertain . . . the minimum number is deemed sufficient to meet the numerosity prerequisite." The trial court makes no finding that the definition of the class meets the standard established in *Ferguson v. Kroger Co.*, 343 Ark. 627, 37 S.W.3d 590 (2001), which holds that in order to have a class action, there must be a defined class that will make it administratively feasible for a court to determine membership in that class. *Id.*

In the present case, there is an argument that it is actionable for an insurer to sell any supplemental insurance to a person who is already eligible for Medicaid benefits. This is covered in subsection one of the class as certified by the order. However, the plain language of subsection two of the certification would also include all those persons who "paid premiums on such [supplemental] policy while enrolled as a Qualified Medicare Beneficiary at any

time between August 1, 1994 and the date of Notice to the Class." The plain language of the certification would include those persons who continued to pay premiums on a preexisting Medi-Pak policy after becoming eligible for Medicaid. This is contrary to the findings of the trial court that such persons who did not request a suspension from Medi-Pak coverage because of Medicaid eligibility should be dismissed from the action.

The trial court wrote a letter on November 13, 2000, finding that there was no showing that BCBSA failed to comply with any suspension requests, and dismissing that aspect of the complaint. The trial court's order of January 29, 2001, formally dismissed this aspect of the complaint on the basis that the applicable law does not prohibit an insurer from continuing to collect premiums for continuing Medi-Pak coverage, unless the owner of the insurance makes a suspension request within ninety days on the basis that he is eligible for Medicaid. Hence, the language of subsection two necessarily includes persons in the class who have suffered no harm because they either failed to notify BCBSA of their Medicaid eligibility or chose to continue paying premiums on their Medi-Pak policy, despite their status as being temporarily in or out of eligibility for Medicaid.

It is not disputed that it would not be feasible to identify such class members by means of cross-referencing computer data because there is no showing that such data can establish whether the individual claimant has intentionally kept Medi-Pak coverage while his or her status changes from coverage to noncoverage by Medicaid. This individual variance in status is based upon each person's circumstances, and depends upon an individual decision that cannot be determined by computer data. Such an amorphous and imprecise class is similar to the proposed class in *Ferguson, supra,* and should not be certified for reasons stated in that opinion. The computer data simply does not contain information whether the putative class number desired a continuation of Medi-Pak coverage, notwithstanding variations in Medicaid coverage month to month.

In my view, certifying a class of an indeterminate size, ranging from seventy-seven to 4,174 members does not identify the

members of the class, and there is no showing how an identification of class members can be achieved. The computer cross-matches simply do not disclose whether a particular person who was already covered by Medi-Pak made a personal decision to continue that coverage for an in-and-out period in which that person's Medicaid eligibility changed back and forth.

The majority seeks to remedy this flaw in the trial court's class certification by pointing out that several months earlier, in the January 29th order, the trial court recognized that such in-and-out members should be excluded from the class. Unfortunately, this important exclusion of non-eligible persons is not reflected in the trial court's certification of the class from which this appeal is brought. The trial court's certification of the class simply does not exclude such persons. While the trial court recognized that as many as 4,000 persons must have their status as class members determined on the basis of individual choices, the order provides no guidance for discovering the reasons for such individual decisions.

The majority approves this flawed class after engrafting upon the final order the provision omitted by the trial court, to the effect that such noneligible persons should be excluded. To accomplish this modification, it was necessary for a modification of the class description to be included in the class to be certified. The trial court did not make this modification, and I strongly submit that we should not do so. It is inappropriate for this court to repair a flawed class certification.

In my view, we should decertify this class just as we decertified the class in *Ferguson, supra*. If the plaintiffs thereafter propose a class that meets the requirements of Rule 23, they may seek certification of that appropriate class. It is well established that we will not reverse a trial court's ruling on class certification absent an abuse of discretion. *See, e.g., Fraley v. Williams Ford Tractor & Equipment*, 339 Ark. 322, 5 S.W.3d 423 (1999). It should be equally clear that we should reverse a class certification where an abuse of discretion results in a clearly erroneous certification.

We enter an unprecedented legal thicket when we modify or amend a class definition during our appellate review on the basis

that the trial court intended to exclude some members of the class, but simply failed to do so. Our exercise of this newly assumed authority to modify the trial court's order transforms this court from its appellate function to that of a supreme trial court, and I am not willing to seek or exercise that new authority and responsibility. The class as certified by the trial court is flawed, and we should reverse and remand.

I respectfully dissent.