VAN BUREN SCHOOL DISTRICT  *v.*  Steven D. JONES,
on His Own Behalf and on the Behalf of All Others Similarly Situated
and Allen Wolfe, on His Own Behalf

05-861                                                    232 S.W.3d 444

Supreme Court of Arkansas
Opinion delivered March 16, 2006

*Thompson & Llewellyn, P.A.*, by: *James M. Llewellyn, Jr.*, for appellant.

*Pryor, Robertson, & Barry, PLLC*, by: *C. Brian Meadors*, for appellees.

ROBERT L. BROWN, Justice. Appellant Van Buren School District (the "School District") appeals from the Crawford County Circuit Court's order granting appellee Steven Jones's class-certification motion. On appeal, the School District argues as its sole point that the circuit court abused its discretion in granting Jones's motion. We disagree, and we affirm.

On August 22, 2003, Steven D. Jones and Allen Wolfe, both certified teachers of the School District, filed a complaint against the School District in which they alleged two causes of action based on breach of contract. The first cause of action was a class-action lawsuit brought by Jones, and the second was an

individual breach-of-contract action brought by Allen Wolfe, an individual who chose to opt out of the class.[1]

Appellee Jones next filed a motion requesting class certification based on claims that members of the class were not compensated for time worked in the morning, during student passing periods, and for afternoon duties, including attending afternoon faculty meetings. He also contended that the class members' thirty-minute lunch periods were shortened due to teacher duties. Jones concluded that his claims were based on his contract with the School District, on Arkansas statutes, and on the School District's policies. The School District responded that Jones's contract was based on a daily rate and not an hourly rate and further stated that there was no School Board policy establishing a fixed number of hours for each working school day. After holding a hearing and considering the posthearing briefs submitted by the parties, the circuit court granted Jones's motion for class certification. It is from that order that the School District now appeals.[2]

## I. Class Definition

The School District first claims that the circuit court abused its discretion in granting Jones's motion for class certification, because the purported class is not susceptible to precise definition by objective standards. The School District contends that Jones has not objectively identified members of the class, because he has failed to allege precisely or clearly the provision of his contract or state law that the School District has allegedly violated.

The School District further argues that Jones has not provided reliable documentation to enable the circuit court to identify the class members objectively. The School District maintains that the circuit court will need to take testimony to determine issues

---

[1] Mr. Jones and Mr. Wolfe joined their two causes of action in a single complaint due to the similarity of the issues and in the interest of judicial efficiency.

[2] Jones notes that there were deficiencies in the School District's abstract and Addendum. Specifically, Jones asserts that the School District failed to include in its abstract or Addendum a reference to its argument that there were no objective criteria by which the class could be defined. By supplementing the abstract and Addendum, Jones cured all but one of the deficiencies. The School District failed to provide in its Addendum its posthearing brief in which it made the argument regarding the absence of objective criteria for a class definition. The School District's arguments on this point, however, were addressed in Jones's posthearing reply brief and in the circuit judge's order. Thus, they were sufficiently preserved.

such as whether each individual teacher worked beyond the sixty minutes of noninstructional time. *See* Ark. Code Ann. § 16-17-117(a)(2) (Supp. 2005). The School District asserts that it did not maintain records of hours actually worked by its teachers and that only partial records remain.

Jones responds that the School District's contention is untrue. He explains that no adjudication or determination on the merits is proper at this stage or is needed for a teacher to be in the class. Rather, he declares that if the teacher "stood" the extra duty or had a shortened lunch, which was uncompensated time, then he or she is in the class. Jones adds that whether that time is part of the school day or whether the teachers are entitled to compensation for that time is another matter altogether that goes to the merits and is not pertinent to the issue of class certification. According to Jones, not only is the class objectively defined, but many of the class members can easily be identified by name, and this has actually been done as evidenced by certain exhibits.

We begin by noting that it is well settled that this court will not reverse a circuit court's ruling on a class certification absent an abuse of discretion. *See, e.g., Arkansas Blue Cross & Blue Shield v. Hicks*, 349 Ark. 269, 78 S.W.3d 58 (2002). In reviewing a lower court's class certification order, "this court focuses on the evidence in the record to determine whether it supports the trial court's conclusion regarding certification." *Arkansas Blue Cross & Blue Shield*, 349 Ark. at 279, 78 S.W.3d at 64. We have held that "neither the trial court nor the appellate court may delve into the merits of the underlying claim in determining whether the elements of Rule 23 have been satisfied." *Id.* Our court has said on this point that "a trial court may not consider whether the plaintiffs will ultimately prevail, or even whether they have a cause of action." *Id.* We, thus, view the propriety of a class action as a procedural question. *See id.*

Regarding specifically the requirements of a class definition, this court has said:

> It is axiomatic that in order for a class action to be certified, a class must exist. The definition of the class to be certified must first meet a standard that is not explicit in the text of Rule 23, that the class be susceptible to precise definition. This is to ensure that the class is neither "amorphous," nor "imprecise." Concurrently, the class representatives must be members of that class. Thus, before a class can be certified under Rule 23, the class description must be

sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class. Furthermore, for a class to be sufficiently defined, the identity of the class members must be ascertainable by reference to objective criteria.

*Id.* at 280-81, 78 S.W.3d at 64-65, (quoting 5 Jeremy C. Moore, *Moore's Federal Practice* § 23.2(1) (Matthew Bender 3d ed. 1997)).

We added along these same lines:

The court in *Ferguson* [*v. Kroger Co.* 343 Ark. 627, 37 S.W.3d 590 (2001),] ultimately held that in order to maintain a class action, there must be a defined class that will make it administratively feasible for a court to determine membership in the class. In other words, class identity must be feasible, and the class cannot be excessively broad or amorphous. *Id.* (citing 7A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure* § 1760 (2d ed.1986)). As this court in *Ferguson* pointed out, clearly defining the class insures that those people who are actually harmed by the defendant's wrongful conduct will participate in the relief ultimately awarded. *Id.* (citing *Simer v. Rios*, 661 F.2d 655 (7th Cir.1981)).

*Arkansas Blue Cross & Blue Shield*, 349 Ark. at 281, 78 S.W.3d at 65.

In *Arkansas Blue Cross & Blue Shield, supra*, the issue was whether to certify a class of Arkansans who had purchased, or paid premiums for, a Medicare Supplement Policy from Blue Cross and Blue Shield of Arkansas while enrolled as Qualified Medicare Beneficiaries during a specified time period. There was testimony that it would be possible to create a computer disk with social security numbers for each of the Medi-Pak customers that could then be cross referenced with the social security numbers of Medicaid recipients to determine which Medicaid recipients had purchased Medi-Pak policies. We concluded that the circuit court did not abuse its discretion in defining the class in part because there were adequate methods in place to assist that court in determining the identity of potential class members. This court further noted that the class definition was specific enough to prevent the class from becoming too unwieldy.

In the instant case, the circuit court did not abuse its discretion in finding that the class could be objectively identified. The circuit court explained in its order that the class would be identified by the following criteria:

The class is defined as anyone who:

a. Was a certified teacher while

b. Working for the [Van Buren School District] between August 1998 to the present and

c. Performed uncompensated non-instructional duties.

The circuit court further defined "uncompensated non-instructional duties" in its order as including: "morning duty, passing period duty, lunch duty/shortened lunch, afternoon duty, and/or after-school teacher meetings."

While there are potentially over four hundred members in the class, the circuit court found that the exhibits introduced by Jones constituted sufficient objective criteria for identifying legitimate class members. The circuit court's order noted that Jones had "satisfactorily explained how class members would be identified by duty schedules already produced, or, in the case where duty schedules for a particular year or school are not currently available, by recovering old duty schedules and lesson books." The court added that by referring to these duty schedules, Jones had already identified many of the individual members by name and that he had included these names in his exhibits.

The School District's reliance on *Southwestern Bell Yellow Pages, Inc. v. Pipkin Enters., Inc.,* 359 Ark. 402, 198 S.W.3d 115 (2004), to deny class certification is without merit. In the instant case, the definition of the class does not require the circuit court to "delve into the underlying merits in order to determine who is an appropriate class member," as the School District would have it. *Southwestern Bell Yellow Pages, Inc.,* 359 Ark. at 407, 198 S.W.3d at 118-19. Contrary to the case before us, in *Southwestern Bell Yellow Pages, Inc.,* the circuit court failed to provide a definition of class membership that was independent of a determination of the merits of the underlying claims. In that case, the class was defined as: "[a]ll Arkansas customers of Defendants who paid or were charged usurious interest charges since November 15, 1997." *Id.* at 405, 198 S.W.3d at 117. This court explained that the ultimate issue in the case was whether the charges paid by the appellees were usurious. Hence, because determining whether an individual was a member of the class would require a determination of the ultimate issue of usury, we concluded that the class definition in that case was not based on objective criteria.

The ultimate issues in the case at bar, however, involve the definition of a school day and an interpretation of statutes regarding noninstructional time. These are not issues that need to be resolved in determining which teachers are class members. The class consists of teachers who "stood" for noninstructional duties such as morning duties, passing duties, a curtailed lunch period, or afternoon duties. Whether these times fit within the School District's understanding of a school day has yet to be decided by the circuit court. At this stage, the issue before us is simply whether the circuit court abused its discretion in finding that the class definition was based on objective criteria. We hold that the circuit court did not.

## II. Rule 23 Criteria

We move next to the School District's argument that the class should not be certified, because it does not meet the criteria in Rule 23 of the Arkansas Rules of Civil Procedure. Rule 23(a) and (b) provide in pertinent part:

> (a) *Prerequisites to Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

> (b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the. controversy.

Ark. R. Civ. P. 23(a)-(b) (2005).

*a. Numerosity*

This court has said the following regarding numerosity:

> The exact size of the proposed class and the identity of the class members need not be established to certify a class; instead, the

> numerosity requirement may be supported by common sense. Thus, there is no bright-line rule for determining how many class members are required to meet the numerosity factor. Suffice it to say that where the numerosity question is a close one, the balance should be struck in favor of a finding of numerosity in light of the trial court's option to later decertify.

*Lenders Title Co. v. Chandler*, 358 Ark. 66, 73, 186 S.W.3d 695 (2004) (internal citations and quotations omitted).

■ In the case before us, the circuit court found that the numerosity requirement was satisfied because the records indicate that there are over four hundred members of the class. Jones notes that this finding is supported by testimony that the School District employs over four hundred certified teachers and that at least 90% of those teachers, and probably more, have performed duties designated by the class definition so that they meet the definition of the class. Jones adds that these facts are corroborated by the exhibits compiled from the School District's duty schedules, which Jones introduced at the hearing.

The School District reargues its class-definition point that the class members cannot be objectively determined. We have already rejected that point as having no merit. We affirm the circuit court on this point.

### b. Commonality

Rule 23(a)(2) requires the circuit court to make a determination that "there are questions of law or fact common to the class." Ark. R. Civ. P. 23(a)(2); *see also Williamson v. Sanofi Winthrop Pharm., Inc.*, 347 Ark. 89, 60 S.W.3d 428 (2001). This court's case law establishes that this requirement be case specific. *See id.* Quoting from Professor Newberg's treatise on class actions, this court has explained:

> [T]he common question prerequisite is interdependent with the notion of joinder impracticability under Rule 23(a)(1). Consideration of the common question issue requires an answer to the question: Common to whom?
>
> . . . .
>
> Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common. The test or standard for meeting the

> rule 23(a)(2) prerequisite is . . . that is there need be only a single issue common to all members of the class. . . . When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected.

*Williamson*, 347 Ark. at 96, 60 S.W.3d at 432 (quoting Herbert B. Newberg, *Newberg on Class Actions*, § 3.10 (3d ed. 1993)).

The School District claims, as it did in its objective-criteria point, that there is no common issue to resolve. It maintains that the principal question of law in this case is which members of the class believe their contract provided for a fixed number of hours per day as opposed to simply a day. Thus, the School District asserts that because the contracts did not contain anything to lead teachers to believe that they were contracting for anything other than a day, and because there is nothing in the Arkansas statutes defining a day as a fixed number of hours, the circuit court would be required to take testimony of individual proposed class members to determine what each member understood the contract, and specifically the term "day," to mean. The School District further points to the United States Fair Labor Standards Act, which provides that teachers are specifically exempt from the application of minimum wage and maximum hour requirements. The School District concludes that there is no state or federal law requirement or school policy that provides that School District teachers are to be paid on an hourly basis, with the sole exception of the lunch-duty statute.

We turn first to the circuit court's order. That court found that the commonality element was met because the class members share the following common issues of fact and legal claims:

a. They are all certified teachers;

b. Their claims are against the same employer, *i.e.*, Defendant Van Buren Public Schools;

c. Each class member has signed the same form contract, such that the only differences between them are some filled-in blanks;

d. A common dispute in this case among the class members is the definition of the word "day" as that term is used on the form

contract, namely how long a "day" is under the contract. The word "day" is pre-printed on the form contracts, which is common to all the class members. The definition of "day" as determined by the fact-finder will apply to all the class members equally;

e. All the class members are required to stand duty (be it morning, lunch, afternoon, passing period, or teacher meetings), and that duty is part of a regular, rotating schedule;

f. It is Plaintiff's allegation that these duties are outside the contract definition of "day." The Defendant disputes this. However, this dispute does not change the fact that a fact-finder in this case need only find the time of the "day" in order to calculate what, if any, monies are owed to the class for duty claims dependent on the "day" definition.

The circuit court additionally found that the class's claims not related to the definition of "day" — *i.e.*, the passing period and short lunch claims — would be governed by state statutes that are applicable to all teachers and that are incorporated into teachers' contracts. These claims, accordingly, are common issues for all members of the class. The circuit court noted, as a final point, that the interpretation of other statutes involved in this case would be common issues of law among all class members.

■ There are clearly common issues in this case, the most critical being what comprises a school day under the teacher contracts. The issue at this stage, as already stated, is whether there are common issues — not what the resolution of those issues should be. The circuit court did not abuse its discretion in making its commonality determination.

*c. Typicality*

This court has held "the typicality requirement is satisfied where the event or practice or course of conduct that gives rise to the claim of other class members is the same event or practice or course of conduct that gives rise to the plaintiff's injury, and where the claim is based upon the same legal theory." *F & G Fin. Servs., Inc. v. Barnes*, 349 Ark. 420, 427, 82 S.W.3d 162, 166 (2002). The class representative's claim must only be typical and not identical. *See id.*

The School District contends that the claims of potential class members would vary from those who claim they have not been paid for their lunch duty to those who claim they worked

uncompensated hours before or after a particular school day. Thus, the School District suggests that each class member would be responsible for providing evidence to support his or her definition of the fixed hour or fixed time that he or she claims exceeds sixty minutes per week under Ark. Code Ann. § 6-17-117(a)(2) (Supp. 2005), and what duty he or she believes is noninstructional, uncompensated duty. The School District concludes by stating that Jones's claims cannot be representative of the class as a whole.

■ We do not agree. The record reflects that Jones has claims for morning duty, passing periods, and after-school teachers' meetings. He further contends that his claims and the claims of other class members arise out of the same legal theory: that the hours worked exceed the time frame of "day" as used in the contracts. We conclude that the evidence in the record sufficiently supports the circuit court's typicality determination regarding Jones.

### d. Adequacy

The School District concedes adequacy by stating that it has no reason to dispute the representations of Jones that he will fairly and adequately protect the interests of the class.

### e. Predominance

This court has said the following regarding predominance:

> The predominance element can be satisfied if the preliminary, common issues may be resolved before any individual issues. In making this determination, we do not merely compare the number of individual versus common claims. Instead, we must decide if the issues common to all plaintiffs "predominate over" the individual issues, which can be resolved during the decertified stage of bifurcated proceedings.

Fraley v. Williams Ford Tractor and Equip. Co., 339 Ark. 322, 344-45, 5 S.W.3d 423, 437 (1999).

The School District contends that there is no set standard fixed by contract or by law that defines the beginning and end of a day that the School District is alleged to have violated. Accordingly, the School District claims that the question of a predominating issue cannot be properly examined by this court.

■ Again, we disagree. The circuit court found that the following three common questions predominate over individual issues in this case: (1) what is the definition of "day" in the teachers' form contracts; (2) what is the proper application of the lunch statutes to the actual lunch time allowed to teachers; and (3) are the ninety minutes of passing periods that teachers have each week uncompensated noninstructional duty? The circuit court concluded that these common issues may be resolved before any individual issues, thus meeting the requirement of *Fraley, supra.* The circuit court further concluded that once these common issues are determined, the case would either be dismissed in the defendant's favor, or a ruling in the plaintiff's favor would result in the class members then being compensated based on the number of minutes per person and the person's hourly rate. Not only is the circuit court's order based on facts in the record, but there is nothing to suggest that the court abused its discretion in making this determination.

*f. Superiority*

Our analysis of the superiority criterion requires the following:

> Rule 23(b) requires that a class action be superior to other available methods for the fair and efficient adjudication of the controversy. This court has held that the superiority requirement is satisfied if class certification is the more "efficient" way of handling the case, and it is fair to both sides. Where a cohesive and manageable class exists, we have held that real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary. This court has further stated that when a trial court is determining whether class-action status is the superior method for adjudication of a matter, it may be necessary for the trial court to evaluate the manageability of the class.

*Arkansas Blue Cross & Blue Shield,* 349 Ark. at 288, 78 S.W.3d at 69-70 (internal citations omitted).

The School District again urges that the potential class members cannot be identified by any objective criteria before this court. Thus, the School District concludes once again that this court cannot make a determination of whether a class action is a

superior method for adjudicating the claims. This court has already rejected this argument in this opinion.

Moreover, the circuit court's finding that the superiority element was met is well grounded. The circuit court noted that initially determining the three common questions that predominate provides efficiency, because once they are answered, that immediately determines the viability of the claims of more than four hundred people. The circuit court correctly observed that this determination will result in either a victory for the School District against the claimants, or the establishment of liability for four hundred plus class members. This, the circuit court stated, is fair to both sides.

The circuit court further found that a class action would be a superior method of deciding the common, predominating issues based on economic feasibility. This is so because each teacher, if the plaintiff is successful, will have a claim of approximately $500 per teacher for each claimed year. The circuit court reasoned that such a small claim would make it economically unfeasible for each individual teacher to bring his or her own suit. There is no evidence that the court abused its discretion in making its superiority finding.

We emphasize, as a final point, that the circuit court found that this class-action suit is administratively feasible based on the School District's voluntary payment of $70,000 in uncompensated lunchtime for the teachers in three of its eleven schools soon after the litigation in the instant case was filed. The School District's superintendent and its accountant testified that it was feasible for the same type of payment to be made for the performance of other uncompensated duties as well. Jones adds that his exhibit fifteen, which was introduced at the hearing, shows how the principals of the three schools calculated the number of minutes owed to teachers for missed lunch time and compensated them accordingly. We conclude, as did the circuit court, that what was done regarding missed lunch time is supportive of the fact that the administration of this class action is feasible.

### III. Motions

#### a. Motion to Tax Costs and Fees

On October 28, 2005, Jones filed a motion to tax costs and fees due to the School District's insufficient abstract and Adden-

dum. Jones argues in support of this motion that the School District failed to include the following testimony in its abstract:

- Testimony from Jones regarding the uniformity of the teachers' pre-printed contracts.[3]

- Testimony from the Superintendent of the School District that effectively conceded that there were no individualized defenses to the class claims.[4]

Jones adds that the School District failed to include exhibits three through twelve in its Addendum, despite the fact that the circuit court specifically referred to them in its order. He further contends that the School District failed to include the following "other relevant pleadings" essential to an understanding of the case:

- The most recent amended complaint;

- The School District's answer to the complaint;

- Jones's motion for class certification.

Jones asserts that he had to correct these errors by filing a Supplemental Addendum. He adds that because he made these corrections, he is not asking that the School District correct its brief. He maintains, however, that based on *Branscumb v. Freeman*, 357 Ark. 644, 187 S.W.3d 846 (2004), and *Kyzar v. City of West Memphis*, 359 Ark. 366, 197 S.W.3d 502 (2004), the School District's abstract and Addendum should be found to be deficient, because it failed to include the motion upon which the circuit court's order was based, it failed to include exhibits referenced by that court, and it failed to include a copy of the amended complaint.

Based on the additions he made in his own supplemental abstract and Addendum to cure the School District's deficiencies, Jones requests that this court, pursuant to Ark. S. Ct. R. 4-2(b)(1), award him a total of $450, which he breaks down as follows:

- *5 pages in the supplemental abstract at $3 per page = $15*

---

[3] This can now be found in Jones's Supplemental Abstract at Supp. Ab. 1.

[4] This can now be found in Jones's Supplemental Abstract at Supp. Ab. 4.

- *45 pages in the supplemental addendum at $3 per page = $135*
  The specific pages for which Mr. Jones asks to be compensated are those containing: (1) the most recent amended complaint; (2) the answer; (3) the motion for class certification; and (4) the initial pages of each exhibit, numbers three through twelve.

- *2 hours of attorney time generating the supplemental abstract and supplemental addendum at $150 per hour = $300*

We grant Jones's motion in part. First, we conclude that Jones should be compensated for pages 2-5 (a total of four pages) in his supplemental abstract, for a total of $12 for the supplemental abstract.[5] Regarding the Supplemental Addendum, we award Jones the total amount he has requested for supplementing with the most recent amended complaint; the answer; the motion for class certification; and the initial pages of each exhibit, numbers three through twelve. The total amount for these forty-five pages is $135.

We finally conclude that the amount requested for attorney time required to prepare the supplemental abstract and Addendum is reasonable, and we award the $300 requested. The total grant is $447.

### b. Motion to strike the School District's reply brief

Jones argues that the School District's reply brief be struck, because it includes material that was not part of the abstract or Addendum. He contends that because there are portions of the reply brief that reference material outside the abstract and Addendum, and because an initial abstracting deficiency cannot be cured in the reply brief, the reply brief should be struck in its entirety. He requests that, at a minimum, this court strike those portions of the reply brief that cite to material not originally abstracted. In support of his motion, he relies on this court's decision in *Clark v. Nat'l Bank of Commerce of Pine Bluff*, 304 Ark. 352, 802 S.W.2d 452 (1991), where this court granted a motion to strike certain transcript excerpts from the appellant's reply brief.

---

[5] We agree with the School District that Jones should not be compensated for page one of his supplemental abstract, as that page is substantially similar to page two of the School District's abstract. Further, an additional statement included on Jones's page one goes to the merits of this case and need not be considered by this court.

We grant Mr. Jones's motion in part and strike that part of the School District's reply brief that refers to matters not included in either the original abstract and Addendum or the supplemental abstract and Addendum.[6]

Motion to tax fees and costs against the School District is granted in part. Motion to strike the School District's reply brief is granted in part.

Affirmed.

---

[6] The School District included material in its reply brief that it did not provide in its abstract or Addendum. According to the School District, this material was necessary to counter Jones's argument that the School District failed to make the argument below that it now makes on appeal. The School District, however, apparently misunderstood the allegation Jones raised in his opening brief. It was Jones's contention that the School District's abstract and Addendum lacked evidence pointing to the preservation of the School District's arguments. Thus, we conclude that it was not permissible for the School District to include material not provided in its original abstract and Addendum to respond to an argument that was not made by Jones.