STATE FARM FIRE & CASUALTY COMPANY *v.*
Jewel LEDBETTER

02-1355                                                         129 S.W.3d 815

Supreme Court of Arkansas
Opinion delivered November 20, 2003

*Baker, Donelson, Bearman & Caldwell* (Memphis), by: *George T. Lewis, III*; and *Rieves, Rubens & Mayton* (West Memphis), by: *Kent J. Rubens*, for appellant.

*Taylor Halliburton & Ledbetter* (Memphis), by: *Mark Ledbetter*, for appellee.

DONALD L. CORBIN, Justice. Appellant State Farm Fire and Casualty Company appeals the order of the Crittenden County Circuit Court certifying Appellee Jewel Ledbetter's suit as a class action pursuant to Ark. R. Civ. P. 23. On appeal, State Farm argues that (1) the trial court erred in granting Ledbetter's motion for certification without any response by them; and (2) class certification is not appropriate in this suit. This case was certified to us from the Arkansas Court of Appeals as involving an issue of first impression. Our jurisdiction is thus pursuant to Ark. Sup. Ct. R. 1-2(b)(1). We reverse and remand.

The record reflects that Ledbetter owns a home in West Memphis, Arkansas, that has been insured with State Farm since 1990. After noticing cracks in the walls of her home and doors that were not properly closing, Ledbetter contacted State Farm. State Farm retained the services of American Leak Detection to investigate the problem. It was discovered that water was leaking from

a broken drain or pipe under the home and was washing out the dirt beneath the home's concrete slab. This, in turn, caused the foundation of the home to settle, leading to the cracks and door problems. Ledbetter filed a claim under her homeowner's insurance policy. In a letter dated, December 5, 2001, State Farm denied the claim, relying on policy exclusions regarding damage caused by "settling" or "earth movement."

Thereafter, on February 7, 2002, Ledbetter filed a complaint against State Farm, alleging that its denial of her claim resulted in a breach of contract. She sought declaratory relief that the policy language relied upon by State Farm does not exclude her claim. She also sought monetary damages stemming from the insured loss, as well as attorney's fees, statutory penalty, and prejudgment interest. Ledbetter also sought certification of her suit as a class action. In its answer, State Farm denied that a class action was appropriate or that Jewel Ledbetter was an appropriate class representative. State Farm then removed the case to federal court, but the federal court summarily remanded the matter back to state court on May 23, 2002.

Ledbetter filed a motion for class certification on July 8, 2002, averring in detail that her suit complied with the six requirements for class-action status set forth in Rule 23. The motion requested that the class be certified as "All State Farm homeowners' insurance policyholders who are or have been insured in the State of Arkansas under the Form FP7955 homeowner's policy since the effective date of said policy (November 1, 1999) to include all current policyholders." Attached to the motion was an affidavit signed by Ledbetter, in support of the motion for class certification. As part of her affidavit, Ledbetter stated that the numerosity element of Rule 23 was present because, based on information provided to her from the Arkansas Insurance Department, there were no less than 134,823 policies using the Form FP7955 language. An e-mail to Ledbetter's counsel from Becky Harrington, an employee with the Department, confirmed the number of policies using this language. An affidavit signed by Harrington and detailing the number of policies that might be affected by a class action was filed by Ledbetter on July 31, 2002.

State Farm did not file a response to the motion for class certification. A hearing on the issue was scheduled for July 29, 2002, but State Farm sought a continuance of the hearing due to

scheduling conflicts. Ledbetter resisted the continuance sought by State Farm, but the court ultimately rescheduled the hearing for · October 14, 2002.

In the meantime, on August 8, 2002, the trial court signed an order granting Ledbetter's motion for class certification, and the order was entered of record on August 13, 2002. The events leading up to the entry of that order are in conflict. State Farm alleges that the trial court entered the order after *ex parte* communications between counsel for Ledbetter and the court's case coordinator took place. State Farm alleges that counsel for Ledbetter requested entry of the order after stating that State Farm was in default for failing to respond to the motion for class certification. Counsel for Ledbetter denied that any improper *ex parte* communications occurred.

After learning of the entry of the order, State Farm filed a motion requesting that the trial court set aside its order, asserting that it was not in default in filing a response and that it had a right to present its position at the hearing scheduled for October 14, 2002. Several days later, on August 20, 2002, State Farm filed a motion pursuant to Rule 52, requesting that the trial court make additional findings of fact and conclusions of law with regard to the order granting certification. One week later, State Farm filed a motion opposing class certification.

A telephone hearing involving counsel for State Farm, counsel for Ledbetter, and the trial court was held on September 6, 2002, after State Farm filed an emergency motion requesting that the trial court prohibit Ledbetter from further publication of class notice. Counsel for State Farm argued that it had not been in default on its response to the motion for class certification, as its response was not due until August 15, and that a hearing was scheduled for October 14. State Farm asked the trial court to set aside its order certifying the class and to maintain the status quo until the hearing on October 14. Ledbetter's counsel objected to any discussion regarding setting aside the trial court's order, because the only motion to be considered was the emergency order regarding class notice. The trial court admitted that it entered the order certifying the class on the basis that it believed State Farm to be in default. The trial court then stated that it needed time to study the parties' briefs and review the law. A

hearing was then scheduled for September 10, 2002, and the trial court stated that it would take care of the business regarding the original order.

At the September 10 hearing, there was confusion over the exact nature of the issue to be considered by the trial court. At the outset, however, the trial court again stated that the sole purpose of the hearing was to revisit the class certification order. State Farm argued that there were three reasons to set aside the order: (1) that State Farm was denied procedural due process with respect to entry of the order; (2) that the order was entered because of a mistaken impression that State Farm had defaulted in responding to the motion for class certification; and (3) judicial economy would be served by setting aside the order. The trial court then explained that the purpose of the hearing was to allow State Farm to place any objections it had to certification on the record.

In a ruling from the bench, the trial court stated that it could find no reason to set aside the order certifying the class and, thus, allowed the original order to stand. The trial court did not rule on State Farm's contentions that it had been denied due process when the order was entered prior to the time they filed a response and prior to the time scheduled for a hearing. This appeal followed.

*I. Timeliness of State Farm's Response to Motion for Class Certification*

For its first point on appeal, State Farm argues that the trial court erred in granting Ledbetter's motion for class certification after erroneously concluding that State Farm was in default for failing to respond to Ledbetter's motion within the time allowed under Ark. R. Civ. P. 6(c). State Farm contends that it was not in default because Ledbetter's motion was not complete until a signed and notarized affidavit of Becky Harrington was filed on July 29, 2002, thereby, giving it until August 15 to file its response. State Farm bases this assertion on the fact that Harrington's affidavit was required as a supporting affidavit that should have been filed with the certification motion under Ark. R. Civ. P. 7(b)(2). State Farm argues further that the trial court erred because there is no requirement that it file a written response to the motion, and that it had a right to present its position on the motion at a hearing scheduled for October 14, 2002. According to State Farm, the pleadings in this case did not conclusively show that class certification was appropriate, thus, the trial court abused its discretion in

certifying the class. We are unable to reach the merits of this argument, as it is not preserved for appellate review.

The record reveals that after the trial court granted Ledbetter's motion for class certification, State Farm filed a motion to set aside the order. It also filed a motion requesting additional findings of fact and conclusions of law. During an emergency telephone conference on a separate issue, State Farm argued that it had not been in default and that it was entitled to present its position regarding certification at the hearing scheduled for October 14. The trial court then scheduled a hearing for September 10 and stated that it would consider the issue of whether class certification was appropriate, and if so, would allow the prior order to stand. At that September 10 hearing, State Farm again raised its arguments regarding the timing of its response and its alleged default. The trial court again explained that the purpose of the hearing was to give the parties a chance to submit their proof regarding class certification. The trial court then concluded that there was no reason to set aside the previous order granting class certification. The following colloquy then took place between counsel for State Farm and the trial court:

> MR. LEWIS: As I understand Your Honor's ruling, you're just ruling that there's no harm in certifying the class and not really reaching the issue of the timeliness of the response?

> THE COURT: No. That's exactly right. I apologize. I was under the impression when I read it that you had been served and that you were aware of the pleadings and had discussed the timing of hearings with the case coordinator and it was just there for me to either up or down on the certification. And I frankly thought that you didn't have any objection is the way I read it because I couldn't find any pleading objecting to the certification. If there was one, I didn't see it.

> MR. LEWIS: Do I understand the Court to be giving us the flexibility to put down a motion to decertify and be heard on that on October 14th?

> THE COURT: Sure. Sure.

■    Clearly, the trial court did not consider or rule on State Farm's contentions regarding the issue of default or the timeliness of its response. The only issue ruled on by the trial court was

whether class certification was appropriate in this case. This court has repeatedly held that a party's failure to obtain a ruling is a procedural bar to this court's consideration of the issue on appeal. *Bell v. Bershears*, 351 Ark. 260, 92 S.W.3d 32 (2002); *Doe v. Baum*, 348 Ark. 259, 72 S.W.3d 476 (2002); *E-Z Cash Advance, Inc. v. Harris*, 347 Ark. 132, 60 S.W.3d 436 (2001). Accordingly, State Farm's argument on this point will not be considered on appeal.

Before leaving this point, we note that State Farm has included a supplemental addendum in its reply brief. Therein is a letter to the trial court from counsel for State Farm stating that they would not be prepared to argue the merits of class certification during the September 10 hearing, and that it was their understanding that the hearing was to be limited solely to the issue of default and the notice that had appeared in newspapers. This letter, however, has no bearing on the fact that the issue regarding default was not addressed by the trial court at the September 10 hearing. State Farm had the burden of obtaining a ruling on that issue, and its attempt to shift the blame does not preserve the issue for this court's review. *See, e.g., Camden Community Dev. Corp. v. Sutton*, 339 Ark. 368, 5 S.W.3d 439 (1999). Ultimately, however, State Farm is not prejudiced by the fact that they were not allowed to present evidence at a hearing, because we agree that the trial court erred in certifying this matter as a class action.

*II. Class Certification Inappropriate*

State Farm's second point on appeal is that the trial court erred in granting Ledbetter's motion for class certification, because the highly individualized nature of insurance claims renders class action treatment inappropriate in the present case. Specifically, Appellant argues that the subclasses set forth in the order do not meet the requirements of Rule 23.

Under Rule 23(a), a trial court may certify a class only if the following conditions are satisfied:

> (1) [T]he class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Pursuant to subsection (b) of Rule 23, the court must also find that:

> [T]he questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

■ ■ The question of whether the elements of a class action have been satisfied is a matter within the broad discretion of the trial court, and we will not reverse the trial court's decision absent an abuse of that discretion. *Advance America, Cash Advance Ctrs. of Ark., Inc. v. Garrett*, 344 Ark. 75, 40 S.W.3d 239 (2001); *Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 954 S.W.2d 898 (1997); *Direct Gen. Ins. Co. v. Lane*, 328 Ark. 476, 944 S.W.2d 528 (1997). However, the determination is purely a procedural question. *BNL Equity Corp. v. Pearson*, 340 Ark. 351, 10 S.W.3d 838, *cert. denied*, 531 U.S. 823 (2000). Neither the trial court nor the appellate court may delve into the merits of the underlying claim when deciding whether the requirements of Rule 23 have been met. *Id.*; *see also Fraley v. Williams Ford Tractor & Equip. Co.*, 339 Ark. 322, 5 S.W.3d 423 (1999) (holding that the trial court may not consider whether plaintiff will ultimately prevail). Remaining mindful of this standard, we now turn to State Farm's arguments regarding class certification.

### A. Monetary-Damages Subclass not Properly Defined

State Farm's first argument on this point is that the monetary-damages subclass is amorphous and is not susceptible to definition. State Farm argues that a class specifically defined to consist of persons with "a common question of law or fact" with the named plaintiff is improper. According to State Farm, under this definition it would be necessary for the court to delve into the merits of the underlying claim in order to determine if the requirements of Rule 23 have been met. Ledbetter contends that the class is susceptible to definition because it consists of a group of policyholders all insured under the same policy.

■ This court discussed the requirements of class definition in the recent case of *Arkansas Blue Cross & Blue Shield v. Hicks*, 349 Ark. 269, 78 S.W.3d 58 (2002):

> It is axiomatic that in order for a class action to be certified, a class must exist. The definition of the class to be certified must first meet a standard that is not explicit in the text of Rule 23, that the class be susceptible to precise definition. This is to ensure that the class is neither "amorphous," nor "imprecise." Concurrently, the class representatives must be members of that class. Thus, before a class can be certified under Rule 23, the class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class. Furthermore, for a class to be sufficiently defined, the identity of the class members must be ascertainable by reference to objective criteria.

*Id.* at 280-81, 78 S.W.3d at 64-65 (quoting *Ferguson v. Kroger Co.*, 343 Ark. 627, 631-32, 37 S.W.3d 590, 593 (2001) (quoting 5 Jeremy C. Moore, Moore's Federal Practice § 23.2(1) (Matthew Bender 3d ed. 1997))).

In the present case, the money-damages subclass is defined as: "[A]ll those insureds of Defendant under Form FP7955 who have a property damage claim or who have had an unpaid property damage claim under said policy that involves a common question of law or fact with the Plaintiff[.]" State Farm contends that it will be impossible to prove whether or not a policyholder has a "common question of law or fact" with Ledbetter, unless each of the homes of the potential class members is inspected for foundation damage alleged to have resulted from water leakage.

It is true that Rule 23(a)(2) requires a determination by the trial court that "there are questions of law or fact common to the class." *BPS, Inc. v .Richardson*, 341 Ark. 834, 20 S.W.3d 403 (2000); *see also Mega Life*, 330 Ark. 261, 954 S.W.2d 898. Simply defining a class so as to track the language of Rule 23, however, does not allow the trial court to readily ascertain the identity of potential class members. Ledbetter has proffered no suggested mechanism for identifying the class other than the common insurance policy. In other words, there are no objective criteria the trial court may employ to determine who is a proper class member.

This court faced a similar problem of identifying class members in *Ferguson*, 343 Ark. 627, 37 S.W.3d 590. There, the appellants argued that the trial court erred in denying their motion for class certification in an action by grocery shoppers against the Kroger Company stemming from a dispute over the grocer's

double-coupon program. This court concluded that it would be impossible to identify members of the proposed class, particularly because of the passage of time and changes in the shoppers' circumstances. The court in *Ferguson* recognized that clearly defining the class insures that those people who are actually harmed by a defendant's wrongful conduct will participate in the relief ultimately awarded.

As the class in this case is presently defined, the trial court would be required to inquire into the facts of each insured's case in order to determine whether that person is a suitable class member. We have repeatedly held that neither the trial court nor the appellate court may delve into the merits of the underlying claim when deciding whether the requirements of Rule 23 have been met. *The Money Place v. Barnes*, 349 Ark. 518, 78 S.W.3d 730 (2002); *Fraley*, 339 Ark. 322, 5 S.W.3d 423 (1999); *see also Capital One Bank v. Rollins*, 106 S.W.3d 286 (Tex. 2003) (holding that a class definition was defective where it required a determination of the merits before the court could ascertain the existence of a class). Accordingly, the trial court abused its discretion in certifying this matter as a class action where the class definition provides no objective criteria for ascertaining class membership and also requires the trial court to delve into the underlying merits in order to determine who is an appropriate class member.

### III. Motion to Strike

On a final note, there is a motion pending before this court in which Ledbetter requests that this court strike a portion of State Farm's reply brief, because it raises an issue not addressed in its initial brief and also improperly delves into the merits of this class action. Because the reply brief deals with a matter not addressed in this opinion, it does not prejudice Ledbetter or affect the outcome of this case, thus, the motion to strike is moot. *See Judkins v. Hoover*, 351 Ark. 552, 95 S.W.3d 768 (2003).

Reversed and remanded.