LENDERS TITLE COMPANY *v.* Don CHANDLER, Individually and On Behalf of All Other Persons Similarly Situated

04-41 186 S.W.3d 697

Supreme Court of Arkansas
Opinion delivered June 17, 2004

*Friday, Eldredge & Clark, LLP*, by: *Robert S. Shafer* and *William A. Waddell, Jr.*; and *Wood, Smith, Schnipper & Clay*, by: *Don M. Schnipper*, for appellant.

*Nichols & Campbell, P.A.*, by: *H. Gregory Campbell*; and *Todd Turner*, for appellee.

D ONALD L. CORBIN, Justice. Appellant Lenders Title Company has appealed the order of the Garland County Circuit Court certifying Appellee Don Chandler's lawsuit as a class

action, pursuant to Ark. R. Civ. P. 23. This is the second such interlocutory appeal. In the first appeal, we reversed the certification on the ground that the trial court's order was insufficient, and we remanded the matter to the trial court for further analysis of the factors set out in Rule 23. *See Lenders Title Co. v. Chandler*, 353 Ark. 339, 107 S.W.3d 157 (2003) (*Lenders I*). Pursuant to our remand, the trial court entered a more detailed order, again granting certification as a class action, and this appeal followed. Our jurisdiction of this appeal is thus pursuant to Ark. Sup. Ct. R. 1-2(a)(7). For reversal, Lenders argues that (1) the trial court lacked subject-matter jurisdiction; (2) the trial court abused its discretion in certifying a class whose members cannot be identified without a manual review of more than 50,000 closing files; and (3) the trial court's conclusions of law regarding predominance and superiority are inadequate and fail to comply with this court's mandate in *Lenders I*. We affirm.

The facts and procedural history of this case were set out at length in *Lenders I*, and we will not repeat them here. It will suffice to say that in January 2001, Chandler sold some Hot Springs property to Everett Lawless. Lenders acted as the settlement and escrow agent. During that transaction, Lenders charged and received $50 each from Chandler and Lawless for document preparation. In October 2001, Chandler filed suit, on behalf of himself and others similarly situated, against Lenders, alleging that the document-preparation fees received by Lenders are for documents prepared by Lenders, including legal documents such as deeds, mortgages, and notes. Chandler alleges that the legal documents were not prepared by attorneys and, thus, that Lenders' act of charging a separate fee for the preparation of legal documents constitutes the unauthorized practice of law. Chandler asserts that Lenders's actions violate the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 to -115 (Repl. 2001). He further asserts a cause of action for negligence, claiming that by failing to communicate to him that the fee charged was unlawful and illegal, and by charging such an unlawful and illegal fee, Lenders breached the standard of care owed to Chandler and others similarly situated.

In March 2002, Chandler filed a motion for class certification. A hearing was held on June 3 and 4, 2002, during which Lenders presented testimony from several witnesses, and both parties offered numerous exhibits. On July 17, the trial court issued its findings of fact and conclusions of law on the class-certification

criteria. Thereafter, on August 21, the trial court entered an order certifying the case as a class action.

Lenders appealed the trial court's 2002 class-certification order to this court, and we reversed and remanded for lack of sufficient findings in the order. *See Lenders I*, 353 Ark. 339, 107 S.W.3d 157. On remand, the parties submitted new proposed factual findings and legal conclusions, but no further testimony or evidence was received. On September 25, 2003, the trial court entered a new order certifying the class action. The order defined the class as "All persons who paid Lenders Title Company a document preparation fee in any transaction after October 23, 1997." Lenders now appeals from this certification order.

■■ Before addressing the points on appeal, we note that the certification of a lawsuit as a class action is governed by Ark. R. Civ. P. 23. The determination that the class-certification criteria have been satisfied is a matter within the broad discretion of the trial court, and this court will not reverse the trial court's decision absent an abuse of that discretion. *Arkansas Blue Cross & Blue Shield v. Hicks*, 349 Ark. 269, 78 S.W.3d 58 (2002); *USA Check Cashers of Little Rock, Inc. v. Island*, 349 Ark. 71, 76 S.W.3d 243 (2002). In reviewing a class-certification order, this court focuses on the evidence in the record to determine whether it supports the trial court's conclusion regarding certification. *Arkansas Blue Cross*, 349 Ark. 269, 78 S.W.3d 58. However, this court will not delve into the merits of the underlying claims when deciding whether the Rule 23 requirements have been met. *Id.*

## *I. Jurisdiction*

■ For its first point on appeal, Lenders argues that the certification order is void and of no effect because the trial court is without jurisdiction to determine whether Lenders's practice of filling in the blanks on standardized documents constitutes the unauthorized practice of law. It asserts that jurisdiction to decide such an issue lies exclusively with our Supreme Court Committee on the Unauthorized Practice of Law. This issue was raised and rejected in the companion case of *American Abstract & Title Co. v. Rice*, 358 Ark. 1, 186 S.W.3d 705 (2004), and our decision in that case is controlling of the issue in this case. Accordingly, we deem it unnecessary to reiterate in the instant case what has been said on this issue in the companion case, and we adopt and incorporate herein by reference the reasoning set forth in that case. *See*

*Tay-Tay, Inc. v. Young*, 349 Ark. 369, 78 S.W.3d 721 (2002); *Loghry v. Rogers Group, Inc.*, 348 Ark. 369, 72 S.W.3d 499 (2002).

## II. Identity of the Class

For its second point on appeal, Lenders argues that the trial court abused its discretion in certifying a class because the members cannot be identified without a manual review of more than 50,000 of its real-estate closing files. Lenders argues that such a manual review is not an administratively feasible way of identifying the class members. Thus, it asserts that the trial court erred in concluding that the class met the criterion of numerosity. In a related argument, Lenders contends that the class definition is imprecise and overbroad. We disagree with both arguments.

### A. Numerosity

As we observed in *Lenders I*, six criteria must be met before a suit may be certified as a class action under Rule 23: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; (5) predominance; and (6) superiority. The first criterion, numerosity, requires that "the class is so numerous that joinder of all members is impractical." Ark. R. Civ. P. 23(a)(1). The exact size of the proposed class and the identity of the class members need not be established to certify a class; instead, the numerosity requirement may be supported by common sense. *See BPS, Inc. v. Richardson*, 341 Ark. 834, 20 S.W.3d 403 (2000); *Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 954 S.W.2d 898 (1997); *Cheqnet Systems, Inc. v. Montgomery*, 322 Ark. 742, 911 S.W.2d 956 (1995). Thus, there is no bright-line rule for determining how many class members are required to meet the numerosity factor. *Mega Life*, 330 Ark. 261, 954 S.W.2d 898. Suffice it to say that "[w]here the numerosity question is a close one, the balance should be struck in favor of a finding of numerosity in light of the trial court's option to later decertify." *Fraley v. Williams Ford Tractor & Equip. Co.*, 339 Ark. 322, 344, 5 S.W.3d 423, 437 (1999) (citing *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925 (11th Cir. 1983); *Foster v. Bechtel Power Corp.*, 89 F.R.D. 624 (E.D. Ark. 1981)).

In the present case, the trial court concluded that the requirement of numerosity was met based on the facts that (1) Lenders has closed more than 50,000 real estate transactions between 1997 and 2001; (2) the evidence showed that Lenders routinely, or "more often than not," charges a document-

preparation fee in such transactions; (3) the issues raised in this case would be present in most of the closings in which Lenders participated; and (4) the act complained of by Chandler, namely the charging of a document-preparation fee, would be typical of Lenders's actions in other closings. These findings support the trial court's conclusion that the class met the numerosity requirement.

## B. Class Definition

In a related argument, Lenders challenges the sufficiency of the class definition set out by the trial court: "All persons who paid Lenders Title Company a document preparation fee in any transaction after October 23, 1997." Lenders asserts that this definition is too broad and thus impermissibly requires the trial court to inquire into the facts of each individual case in order to determine whether the person is a class member. It also asserts that there is no administratively feasible way of identifying the class members, because that would require a manual review of more than 50,000 of its closing files. To support its position, Lenders relies on this court's holdings in State Farm Fire & Cas. Co. v. Ledbetter, 355 Ark. 28, 129 S.W.3d 815 (2003), and Ferguson v. Kroger Co., 343 Ark. 627, 37 S.W.3d 590 (2001). Those cases are distinguishable.

In Ledbetter, 355 Ark. 28, 36, 129 S.W.3d 815, 820-21, the class was defined as "[A]ll those insureds of Defendant under Form FP7955 who have a property damage claim or who have had an unpaid property damage claim under said policy that involves a common question of law or fact with the Plaintiff[.]" (Emphasis added.) In that case, the insurer, State Farm, argued that it would be impossible to prove whether or not a policyholder has a "common question of law or fact" with Ledbetter, unless each of the homes of the potential class members is inspected for foundation damage alleged to have resulted from water leakage. Thus, an individual inspection of each policyholder's home would have been necessary to determine whether a policyholder was a member of the class. This court reversed the class certification on the ground that the class definition provided no objective criteria for ascertaining class membership and also required the trial court to delve into the underlying merits in order to determine who is a class member. Thus, this court concluded that the class definition was too broad and imprecise because potential members could not be determined by objective criteria without necessitating the trial court's inquiry into the merits of the plaintiff's cause of action.

In Kroger, 343 Ark. 627, 37 S.W.3d 590, the plaintiffs proposed that the class be defined as persons who were misled into

shopping at a Kroger store because of double-coupon advertisements from 1990 through 1992. Kroger argued that under such a definition, it would be virtually impossible to identify members of the proposed class. This court agreed, holding that in order to be certified as a class action under Rule 23:

> [T]he class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class. Furthermore, for a class to be sufficiently defined, the identity of the class members must be ascertainable by reference to objective criteria.

*Id.* at 631, 37 S.W.3d at 593 (quoting 5 Jeremy C. Moore, *Moore's Federal Practice* § 23.2(1) (Matthew Bender 3d ed. 1997)). Under the class definition proposed by the plaintiffs, anyone could claim to have been induced to shop at Kroger to take advantage of the double coupons, and there would be no objective criteria, *i.e.*, records, to verify such claim.

In the present case, the trial court defined the class in a precise, objective way as all persons who paid Lenders a document-preparation fee in any transaction after October 23, 1997. The class in this case is identifiable from objective criteria, namely the payment of a document-preparation fee in a closing transaction with Lenders. In contrast, the proposed class in *Kroger* could have included anyone who claimed to have been induced to shop there to take advantage of the double-coupon advertisement. There were no objective criteria to verify if persons were, in fact, members of the class. Moreover, unlike that in *Ledbetter*, the class definition here goes beyond the mere tracking of the language of Rule 23 that the members share a "common question of law or fact" with Chandler. Additionally, unlike *Ledbetter*, the identity of the class members in this case can be ascertained without an investigation into the merits of each individual's claim.

We are not persuaded by the argument that it is not administratively feasible for Lenders to have to manually review each of the more than 50,000 closing files to identify the class members. Instead, we agree with Chandler that Lenders should not be allowed to defeat class certification by relying on its inadequate filing and record system. The fact that Lenders cannot discover such information by the push of a button on a computer does not render the class identification any less administratively feasible. Administratively feasible does not mean convenient.

Were Lenders to succeed on this point, it would undoubtedly encourage other businesses to keep bad records for the purpose of avoiding class actions. We thus affirm on this point.

### III. Predominance and Superiority

The final argument made by Lenders is that the trial court's conclusions of law on the criteria of predominance and superiority are inadequate and fail to comply with this court's mandate in *Lenders I*. Particularly, Lenders asserts that on remand the trial court made no change in its conclusion of law on predominance. Lenders also asserts that the trial court's post-remand conclusion of law on superiority is inadequate.

In *Lenders I*, 353 Ark. 339, 107 S.W.3d 157, this court set out the trial court's findings of fact and conclusions of law in their entirety. Those concerning predominance and superiority were contained in a single paragraph:

> 11. The common issues raised in the Plaintiff's complaint would predominate throughout the class and a class action is the superior method with which to address the issues raised in this case.

*Id.* at 347, 107 S.W.3d at 161. After reviewing the order *in toto*, this court held that it was insufficient and gave the following examples of its insufficiency:

> The order does not state what the trial court found to be questions of law or fact common to the class. *Nor does the order explain why or how the common issues would predominate over individual issues. Likewise, the order does not state why a class action in this case is the superior method for adjudicating the claims. Rather, in conclusory fashion, the order merely states that the common issues raised in the complaint predominate and that a class action is the superior method for addressing these issues.* It does not address the argument made by Lenders that a class action is not superior because identifying the potential members of the class will require a closing-transaction-by closing-transaction analysis.

*Id.* (emphasis added). Lenders relies on this highlighted language to support its argument that the current certification order is also insufficient. We do not agree.

▪ As stated in *Lenders I*, Rule 23 does not require the trial court to conduct a rigorous analysis; rather, the trial court must undertake enough of an analysis to enable us to conduct a meaningful review of the certification issue. Lenders misconstrues the

foregoing language as a directive by this court for the trial court to answer specific questions posed by this court. It was not our intention to create a laundry list of things for the trial court to consider. Rather, we were simply emphasizing that the order, as a whole, "[fell] short of the requirements of Rule 23." *Id.* In short, we view the foregoing language as merely setting examples of how the trial court's order could have been made sufficient. We now turn to Lenders's arguments regarding the elements of predominance and superiority.

### 1. *Predominance*

The criterion of predominance requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Ark. R. Civ. P. 23(b). *See also BPS, Inc.*, 341 Ark. 834, 20 S.W.3d 403. The starting point for examination of this issue is whether a common question of law or fact exists in the case for all class members. *Id.* If so, the next issue is whether the common question predominates over individual questions. *Id.* When deciding whether common questions predominate over other questions affecting only individual members, this court does not merely compare the number of individual versus common claims. *Id.* Rather, this court decides if the issues common to all class members "predominate over" the individual issues, which can be resolved during the decertified stage of a bifurcated proceeding. *Id.* Thus, the mere fact that individual issues and defenses may be raised regarding the recovery of individual members cannot defeat class certification where there are common questions concerning the defendant's alleged wrongdoing that must be resolved for all class members. *USA Check Cashers*, 349 Ark. 71, 76 S.W.3d 243. That being said, this court has recognized that the predominance requirement is far more demanding than the commonality requirement. *BPS, Inc.*, 341 Ark. 834, 20 S.W.3d 403; *Baker v. Wyeth-Ayerst Labs. Div.*, 338 Ark. 242, 992 S.W.2d 797 (1999) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)).

In analyzing predominance, we start by determining whether there are common questions of fact or law. The current certification order contains the following six questions of law or fact common to the class:

> 1. Does the filling in of blanks in a pre-printed legal form constitute the practice of law?

2. Do the admitted practices of the Defendant violate the Deceptive Trade Practices act?

3. Does the Defendant have a duty to disclose, with any degree of specificity, its role in the preparation of documents which purport to convey or otherwise affect any legal rights a party may have?

4. Does the document preparation fee routinely charged cover only the preparation of non-legal documents or does it actually compensate for time spent in the preparation of legal documents?

5. Which services provided by the Defendant are covered by the closing fee, which are covered by document preparation fees and which are covered by other charges?

6. During which time periods were attorneys employed full-time or part-time by the Defendant to oversee the preparation of legal documents?

The trial court concluded that these common questions clearly predominate throughout the class.

 In light of the foregoing common questions, we cannot say that the trial court abused its discretion in concluding that these common issues predominate over individual issues. The common questions, particularly the first, second, and fourth questions, are clearly preliminary, threshold matters that must be decided before any individual issues can be considered. Because these common questions involve threshold issues, the fact that other individual issues exist cannot be used to defeat class certification. We thus affirm on this criterion.

### 2. Superiority

 The final criterion challenged by Lenders is that of superiority, which requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Ark. R. Civ. P. 23(b). *See also* *USA Check Cashers*, 349 Ark. 71, 76 S.W.3d 243. This criterion is satisfied if class certification is the more efficient way of handling the case and if it is fair to both sides. *Id.* Where a cohesive and manageable class exists, this court has held that real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual

issues, if necessary. *Arkansas Blue Cross*, 349 Ark. 269, 78 S.W.3d 58; *USA Check Cashers*, 349 Ark. 71, 76 S.W.3d 243. The smallness of the claims is a factor to be considered in deciding superiority; however, it may not be the sole basis for certifying a class. *BNL Equity Corp. v. Pearson*, 340 Ark. 351, 10 S.W.3d 838 (2000). Another factor to consider is "the point that without the class action procedure, numerous meritorious claims might go unaddressed." *Id.* at 361, 10 S.W.3d at 844.

The trial court found that a class action was not only the most fair and efficient way to adjudicate the issues raised by Chandler, but likely the *only* fair and efficient way. In so ruling, the trial court focused on the fact that the standard document-preparation fee charged by Lenders to each class member was a mere $50, "illustrating clearly that individual cases would not be economically feasible." The trial court went on to find:

> Even if it were somehow feasible to maintain individual cases, the repeated litigation of the liability issues and the possibilities of inconsistent results in a case like this one outweigh the allegation that there would be a variance in the proof on damage as to each claimant. Alternatively, if the Defendant prevails on liability, the issue would be laid to rest at the conclusion of this case. *See Summons v. Missouri Pacific R.R.*, 306 Ark. 116, 813 S.W.2d 240 (1991).
> The Court further finds that trial on the common questions is manageable and preferable to numerous individual cases filed in as many as nine different circuits.

Thus, the trial court found that a class action is the superior method to try these issues because (1) the individual claims are for small amounts that are not feasible for class members to litigate individually; (2) a class action would prevent inconsistent results on the common issues; (3) a class action is more fair to both the individual class members and to Lenders; and (4) a class action is manageable and the preferred way to handle such claims.

Lenders argues that the trial court's findings on superiority are flawed. First, Lenders asserts that the finding regarding the economical feasibility of a class action in this case is negated by a section of the Arkansas Deceptive Trade Practices Act, which provides a litigant who is successful in bringing a claim under the Act may recover attorney's fees. *See* Ark. Code Ann. § 4-88-113(f) (Repl. 2001). We do not disagree with this assertion. However, we do not view the availability of attorney's fees, standing alone, as negating the trial court's analysis on superiority. The trial court's

finding on this issue was but one of the four findings that the trial court concluded weighed in favor of the superiority of a class action.

Lenders also claims that the trial court's finding that individual cases may lead to inconsistent results actually weighs against class certification. On this point, Lenders mistakenly asserts that the inconsistent results that the trial court referred to are those arising from the differences in each of the individual's claims. We do not agree with this view, as we think it is apparent from the context that the inconsistent results envisioned by the trial court are those that would arise from the individual cases having to be tried in different courts, by different judges and juries. In this respect, the trial court's finding supports its conclusion on the criterion of superiority.

Finally, Lenders argues that the causes of action asserted by Chandler, namely a violation of the Arkansas Deceptive Trade Practices Act and negligence, are not proper for class actions because each claim will necessarily turn on what each individual class member was told or believed during the closing transactions. It asserts that the conduct complained of by Chandler cannot give rise to a cause of action for damages unless a class member demonstrates to the factfinder that he or she would have objected to its preparation of legal documents and opted for the services of an attorney, if Lenders's agents had disclosed that it was not permitted to complete such legal documents. In this respect, Lenders argues that the injury is in the mind of the individual.

To support its argument, Lenders relies on *Baker*, 338 Ark. 242, 992 S.W.2d 797, wherein this court concluded that the trial court did not abuse its discretion in refusing to certify a class action where the case "present[ed] numerous individual issues that [went] to the heart of the defendants' conduct, causation, injury, and damages, such that the defendants' liability as to each plaintiff will have to be resolved on a case-by-case basis." *Id.* at 249, 992 S.W.2d at 801. Lenders also relies on the Eighth Circuit's decision in *Glover v. Standard Federal Bank*, 283 F.3d 953 (8th Cir.), *cert. denied*, 537 U.S. 943 (2002), wherein the appellate court reversed the order of certification in an action brought by mortgage borrowers to recover fees paid by the lender to a broker on the ground that they were illegal referral fees. The Eighth Circuit concluded that the issue was governed by the policy statements issued by the Department of Housing and Urban Development

(HUD), which required a determination on a case-by-case basis,[1] and that, as such, a class action was not appropriate.

 Neither of these cases requires reversal of the certification order in this case. The six questions of law or fact that the trial court found to be common to all members of the class may be determined without a case-by-case analysis into the merits of each individual's claims. For example, the first and third common questions, concerning whether the filling in of standardized legal forms constitutes the practice of law and, if so, whether Lenders owed a duty to disclose that such documents were prepared by non-lawyers, are issues of law that do not depend upon the particular circumstances of an individual's case. Similarly, the fourth question, regarding whether the document-preparation fee *routinely* charged by Lenders compensates for time spent preparing legal documents, may be answered without having to resort to the particular facts of each individual case. The fact that there may be individual issues regarding damages does not defeat the trial court's finding that a class action is the superior method for addressing the predominant, threshold issues that are common to the entire class. We thus affirm the trial court's ruling on superiority.

THORNTON, J., dissents.

RAY THORNTON, Justice, dissenting. For the reasons articulated in my dissent in *American Abstract & Title Co. v. Rice*, 358 Ark. 1, 186 S.W.3d 705 (2004), I respectfully dissent. Specifically, I would conclude that the trial court lacked subject-matter jurisdiction to consider the claims raised in appellee's complaint because such issues stem from allegations of the unauthorized practice of law, and all such matters must be considered by our Committee on the Unauthorized Practice of Law.

I respectfully dissent.

---

[1] HUD established a two-pronged test for determining whether fees paid to a mortgage broker were illegal referral fees. The test necessarily required a determination in each individual case as to (1) whether goods, facilities, and services were actually provided for the compensation paid; and (2) whether the compensation was reasonably related to the value of the goods, facilities, or services provided.