FARMERS INSURANCE COMPANY, INC. *v.*
Harry SNOWDEN, Individually and as Representative of All
Persons Similarly Situated

05-527                                           233 S.W.3d 664

Supreme Court of Arkansas
Opinion delivered April 13, 2006

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.,* by: *Hermann Ivester* and *Lyn P. Pruitt,* for appellant.

*Fleming & Associates, L.L.P.,* by: *Scott A. Love* and *Anita Kawaja;* and *Matthews, Sanders & Sayes,* by: *Gail O. Matthews,* for appellee.

BETTY C. DICKEY, Justice. Appellant, Farmers Insurance Company, Inc. ("Farmers"), appeals an order of the Faulkner County Circuit Court, approving class certification for appellee, Harry Snowden, and appointing Snowden as the class representative. Farmers alleges that (1) the trial court had no jurisdiction over this case, (2) the class-certification order is not the product of the trial court's independent judgment, and (3) the class certification was improper because individualized inquiries for every class member are necessary to determine the existence of injury and amount of damages. We disagree and affirm.

### Statement of the Case

On January 26, 2000, Snowden's vehicle was involved in an accident in Mayflower, Arkansas, resulting in property damage. At that time, the car was covered by an automobile insurance policy

issued by Farmers. An adjuster from Farmers inspected the car and paid $4,325.60 for the repairs. Snowden accepted the repaired car. However, Snowden's wife wrote a letter to Farmers on February 14, 2000, requesting that the company compensate the Snowdens for, what she described as, the "depreciation loss" sustained by the vehicle, as it had a low mileage at the time of the accident. In response, Farmers contacted Snowden and advised him that the policy did not cover diminished value.

Snowden, individually and as representative of all persons similarly situated, filed suit against Farmers in the Circuit Court of Faulkner County on May 9, 2000, alleging that Farmers breached its insurance contracts with him and other policyholders by failing to compensate for the diminished value of their vehicles. Snowden sought recovery for the difference between the value of his car prior to the accident and the value of his car after the accident, arguing that the policy entitled him to payment for the difference in market value pre- and post-accident, or what he called "diminished value."

On June 14, 2000, Farmers filed a Notice of Removal to the United States District Court for the Eastern District of Arkansas, and filed a Notice of Filing of Notice of Removal one day later. However, on August 24, 2000, the federal district court executed an order remanding the case back to the Faulkner County Circuit Court. The order was entered by the clerk of the district court on August 25, 2000, and was sent by certified mail to the "Circuit Ct. Of Faulkner Cty, 1st Division, 801 Locust St., Conway, Arkansas 72032," on August 28, 2000. That physical address is, and was at the time the remand order was mailed, the correct address of the Faulkner County clerk. The order was actually received by the circuit judge, Hon. David L. Reynolds, and not given directly to the clerk of the court.

The circuit court, Hon. John Ward, conducted a hearing on the issue of class certification on September 15, 2004. Snowden's breach-of-contract action identified the proposed class as follows:

All persons in the State of Arkansas who:

    (a) are currently insured by, or at the time of the loss were insured by a personal automobile insurance policy issued in Arkansas by Farmers Insurance for property damage to a motor car, including comprehensive or collision motorist property damage coverage (collectively the "Coverages");

(b) made a claim for physical damage to their insured car and for which the repair estimate included frame/structural repair and/or paint work;

(c) received one or more payments from Farmers Insurance under one of the coverages for physical damage repairs to an insured car in the amount of $500 or greater (but, not including cars declared a total loss) at any time during the period beginning May 9, 1995 and ending on the date the notice of this class action is published (the "Class period"); and

(d) did not receive a payment for diminished value from one of the defendants.

Excluded from this class are:

(a) individuals who made a claim and received compensation for diminished value; (b) individuals who insured a leased vehicle; (c) employees of Farmers Insurance, including directors and officers; (d) Plaintiff's counsel; and (e) the Judge of the Court to which this case is assigned.

The circuit court signed an order on January 18, 2005, certifying the class as defined by Snowden. Farmers filed timely Notices of Appeal from the Order and Finding Related to Class Certification. On November 10, 2005, this court assumed jurisdiction from the court of appeals, pursuant to Ark. Sup. Ct. R. 1-2(b)(1) and (6), as this case involves an issue of first impression and statutory interpretation.

## I. The trial court had jurisdiction.

Farmers argues that the district court did not comply with 28 U.S.C. § 1447(c) because the court's Order of Remand was not received by the circuit court clerk, thus the circuit court did not have jurisdiction.[1] Snowden asserts that the only requirement of section 1447(c) is that the district court mail a certified copy of the

---

[1] Farmers filed a motion asking this court to take judicial notice of several alleged facts regarding this point on appeal, and asking us to defer consideration of that request until consideration of the merits. The motion to defer consideration is now moot, and the motion to take judicial notice is denied, as appellant included a mixture of fact and opinion in its request.

Order of Remand to the clerk of the state court, at which point the federal court is divested of jurisdiction.

To resolve this issue, we must interpret the meaning of section 1447(c). We review questions of statutory interpretation *de novo*, and we also adhere to the basic rule of statutory construction, which is to give effect to the intent of the legislature. *Stivers v. State,* 354 Ark. 140, 118 S.W.3d 558 (2003). We construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language, and if the language of the statute is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion to resort to rules of statutory interpretation. *Id.* at 144–45, 118 S.W.3d at 561.

Section 1447 specifically instructs that "[a] certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case." 28 U.S.C. § 1447(c). Farmers admits that the district clerk did mail a certified copy of the order to the First Division Circuit Court of Faulkner County, the relevant state court involved in this proceeding, but contends that the circuit court did not have jurisdiction since the order was actually received by the office of Hon. David L. Reynolds, the First Division Circuit Judge, instead of the circuit clerk. However, there is no requirement that the district court ensure that the order is received or filed by the clerk of the trial court to divest the federal court of jurisdiction; only the requirements that the federal court sign an order of remand and mail a certified copy to the clerk of the state court. Whether the order was ultimately received by the clerk, misplaced, lost, or destroyed has no bearing on a section 1447(c) analysis.[2]

---

[2] While the Eighth Circuit has not addressed this issue before, the Fourth Circuit opines that the action of the courts should actually determine the vesting of jurisdiction rather than the action of clerks:

> [I]t should be the action of a court (entering an order of remand) rather than the action of a clerk (mailing a certified copy of the order) that should determine the vesting of jurisdiction." *Van Ryn v. Korean Air Lines,* 640 F. Supp. 284, 285 (C.D. Cal.1985). To hold otherwise would impermissibly elevate substance over form. One party should not arbitrarily receive a second opportunity to make its arguments due to a clerical error. In sum, the plain language of the statute, the policy behind it, and logic all support the conclusion that § 1447 divests a district court of jurisdiction upon the entry of its remand order.

*In re Lowe,* 102 F.3d 731, 735 (4th Cir. 1996)

■ The evidence reveals that the order was properly mailed to the correct physical address of the Faulkner County clerk's office, but that the typical procedure at that office is for the county judge's office to receive the mail first and redistribute it as needed to each individual county office. The circuit judge's office received the order but did not forward it to the clerk to be entered into the record. However, when the circuit clerk was advised on June 6, 2005, that there was not an Order of Remand in the record, she obtained the order from the judge's office and filed it. While the order was not entered into the record until June 6, 2005, the district court mailed it to the correct physical address of the clerk of the state court, and divested itself of jurisdiction, on August 28, 2000. By default, the circuit court gained jurisdiction five years prior to the order certifying the class. Accordingly, we find that the circuit court did have proper jurisdiction over the instant case.

## II. The Class-Certification Order is the product of the trial court's independent judgment.

For its second point on appeal, Farmers takes issue with the fact that the court adopted the class-certification order, without any changes or additions, that had been prepared by appellee's counsel. Farmers asserts that the order constitutes an opinion, and that it is impermissible for the trial court to simply adopt an order submitted by counsel. To support its theory, Farmers cites to a Third Circuit Court of Appeals opinion that does express concern about trial courts adopting a party's proposed opinion as its own. *See Bright v. Westmoreland County*, 380 F.3d 729, 730 (3rd Cir. 2004).

■ As Snowden correctly notes, the case cited by appellant, *Bright, supra*, is not controlling and is inapposite to the instant case. The court in *Bright* was ultimately concerned that there was no evidence in the record to establish that the trial court conducted its own independent review. *Id.* In this case, the record establishes that the trial court instructed both sides to prepare a precedent at the conclusion of a hearing on the issues and did not make a ruling for more than four months. There is no evidence to suggest the trial court failed to independently review the issues before making a final judgment. In addition, this court has recognized that "it is customary for trial judges to rely upon the members of the bar to prepare judgments, orders and decrees in accordance with the

court's instructions." *Barnett v. Howard*, 363 Ark. 150, 211 S.W.3d 490 (2005). The court in the instant case asked both sides to submit an order that would "pass muster with the appellate court," and noted that the judge "may or may not use any or all or part of that, but I'd like to have it." The record reveals that the judge not only conducted a hearing, but took several months to issue a final decision. The simple fact that one party's prepared precedent was used does not suggest that the court did not exercise its independent judgment. This court finds no error on the part of the trial court simply because it adopted appellee's prepared order.

### III. Class certification was not improper.

Finally, Farmers asserts that the class certification was in error as the appellee did not prove the following: (1) a "precise" class definition identifying those whose cars were not "substantially" restored; (2) common questions that would predominate in adjudicating the alleged liability of Farmers to class members; and (3) the superiority of a class action to resolve the dispute. Snowden contends that the proposed class did meet all the requirements of Rule 23 of the Arkansas Rules of Civil Procedure, and, more specifically, that both the commonality and predominance requirements were satisfied.

Rule 23(a) and (b) of the Arkansas Rules of Civil Procedure sets forth the prerequisites for certifying a class action. Rule 23 reads in pertinent part:

> (a) *Prerequisites to Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

> (b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In addition to the requirements of Rule 23, the court must be able to objectively identify members of the class. *Southwestern Bell Yellow*

*Pages, Inc. v. Pipkin Enters., Inc.*, 359 Ark. 402, 198 S.W.3d 115 (2004). This court has referred to the requirements as six criteria that must be met before a suit may be certified as a class action: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; (5) predominance; and (6) superiority. *Lenders Title Co. v. Chandler*, 353 Ark. 339, 107 S.W.3d 157 (2003). Appellant first contends that the purported class is not susceptible to precise definition, and, further, that the requirements of commonality, predominance, and superiority are also not satisfied.

We have recently laid out our standard in reviewing class certification:

> [I]t is well settled that this court will not reverse a circuit court's ruling on a class certification absent an abuse of discretion. *See, e.g., Arkansas Blue Cross & Blue Shield v. Hicks*, 349 Ark. 269, 78 S.W.3d 58 (2002). In reviewing a lower court's class certification order, "this court focuses on the evidence in the record to determine whether it supports the trial court's conclusion regarding certification." *Arkansas Blue Cross & Blue Shield*, 349 Ark. at 279, 78 S.W.3d at 64. We have held that "neither the trial court nor the appellate court may delve into the merits of the underlying claim in determining whether the elements of Rule 23 have been satisfied." *Id.* Our court has said on this point that "a trial court may not consider whether the plaintiffs will ultimately prevail, or even whether they have a cause of action." *Id.* We, thus, view the propriety of a class action as a procedural question. *See id.*

Regarding specifically the requirements of a class definition, this court has said:

> It is axiomatic that in order for a class action to be certified, a class must exist. The definition of the class to be certified must first meet a standard that is not explicit in the text of Rule 23, that the class be susceptible to precise definition. This is to ensure that the class is neither "amorphous," nor "imprecise." Concurrently, the class representatives must be members of that class. Thus, before a class can be certified under Rule 23, the class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class. Furthermore, for a class to be sufficiently defined, the identity of the class members must be ascertainable by reference to objective criteria.

*Id.* at 280-81, 78 S.W.3d at 64-65, (quoting 5 Jeremy C. Moore, *Moore's Federal Practice* § 23.2(1) (Matthew Bender 3d ed. 1997)).

*Van Buren Sch. Dist. v. Jones*, 365 Ark. 610, 232 S.W.3d 444 (2006).

*a. Class definition*

Farmers contends that the class definition in the instant case is not well defined, as it defines a class of at least fifty thousand members, of which thousands could not satisfy the requirements to prove any liability. Farmers next asserts that the proposed class definition does not limit itself specifically to those who suffered any diminished value, and that the evidence suggests that the court would have to inquire into the facts of each insured's case in order to determine if that individual would be a suitable class member. Essentially, Farmers' argument is that there is not any objective criteria from which the court could determine who the suitable class members are without inquiring into the facts of each individual case.

James Richards, Snowden's expert, testified that several individual factors must be considered to determine if a certain vehicle has suffered from diminished value. It requires that pre-accident versus post-accident value of each vehicle be assessed by considering: (1) the car's pre-loss physical condition; (2) the car's mechanical condition; (3) the car's mileage; (4) the car's age and history; (5) the car's make and model; (6) the car's warranties; (7) the car's depreciation; (8) optional equipment and accessories; (9) lack of certain equipment; (10) owner maintenance: (11) the car's color; (12) prior ownership; (13) seriousness of damage from the accident; (14) the quality of repairs; and (15) other marketplace factors. In addition, Bo Hardraves, a long-time employee of Farmers, testified that many of these factors are not readily available in claims files, especially when considering used cars that may have been purchased without a complete knowledge of its history. This court has held that the court may not delve into the underlying merits in order to determine who is an appropriate class member. *Southwestern Bell Yellow Pages, Inc. v. Pipkin Enters., Inc.*, 359 Ark. 402, 198 S.W.3d 115 (2004).

The circuit court, however, found that the class was sufficiently defined so that the parties can determine with reasonable certainty which individuals would fit into the class. This court agrees, noting that in order to determine if an individual fits into

the class, the court only has to ensure that the claimant had a specific coverage with Farmers, made a certain type of damage claim to their insured vehicle, received payment within a certain time frame, and did not receive any payment for diminished value. While this proposed class will most likely include individuals who will not be able to prove a valid claim for damages against Farmers, damages is a separate issue.

### b. Commonality and predominance

■ Rule 23 requires that questions of law or fact be common to the class, and also that those common questions predominate over any questions affecting only individual members. Ark. R. Civ. P. 23(b). As noted in the discussion of class definition, there are several individual factors to be examined in order to determine if an insured is entitled to diminished value. However, this court must determine if that is the preliminary issue. If a case involves preliminary issues common to all class members, predominance is satisfied even if the court must subsequently decertify a class due to individualized damage issues. *Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 954 S.W.2d 898 (1997) (where the common issues of what type of insurance policy was issued and what type of notice was required prior to termination were seen as predominating questions that could be determined before decertifying); *see also SEECO, Inc. v. Hales*, 330 Ark. 402, 954 S.W.2d 234 (1997) (where the predominating question was determined to be whether the defendant had engaged in a scheme, rather than the individual issues such as reliance and diligence). However, if the preliminary issues are individualized, then predominance is not satisfied and class certification is improper. *Id.* Therefore, we must decide if there is a predominating common question that can be answered before determining which insureds are entitled to damages for diminished value. We find that there is.

The circuit court determined at least two questions that predominate over the individualized issues regarding which insureds had a valid claim for diminished value: (1) whether the Arkansas Personal Auto Policy obligates Farmers to compensate insureds for diminished value in first-party property-damage claims, and (2) whether Plaintiff and members of the class had any obligations other than presenting their first-party claim for property damage to Farmers to receive compensation for diminished value. While this court realizes there may be a time in the future

where the class needs to be decertified for individuals to prove damages, we do not feel that those issues predominate over the common questions noted above.

In *Williamson v. Sanofi Winthrop Pharmaceuticals, Inc.*, 347 Ark. 89, 60 S.W.3d 428 (2001), this court determined that the breach-of-contract claim was not appropriate for class certification, as it involved several individualized factors. For example, the court had to analyze issues such as meeting of the minds and whether each employee truly believed when a contract was created. *Id.* In the instant case, the class is made up of insureds who all had the same policy with Farmers. The overarching issue is whether the policy owned by all the insureds bound Farmers to pay proper claims for diminished value, which is a question that does not rely on factors such as meeting of the minds or when the contract was created. It is a question on which this case turns and is a strict question of Arkansas law and contract interpretation.

We also denied class certification in *State Farm Fire & Casualty Co. v. Ledbetter*, 355 Ark. 28, 129 S.W.3d 815 (2003). In *Ledbetter*, the insured brought a class action against her insurer, State Farm, to recover for damage from settling under her home. Her original claim had been denied because State Farm claimed that the policy did not cover damage from "settling" or "earth movement." *Id.* Like Farmers, State Farm responded that the court would have to delve into the merits of the case to determine if the requirements of Rule 23 had been met; more specifically, that it would be impossible to determine which policyholders had a common question of law or fact with Ledbetter, unless each home was inspected to determine if there was foundational damage from water leakage. *Id.* What distinguishes the instant case from *Ledbetter* is that the money-damages subclass in *Ledbetter* was simply trying to mimic the language from Rule 23 by stating that the class would be defined as "[a]ll those insureds of Defendant under Form FP7955 who have a property damage claim under said policy that involves a common question of law or fact with Plaintiff[.]" *Id* at 36. It is clear that in order to identify those individuals, each claim would have to be evaluated to see if it was the same situation as the plaintiff. The reason that class was not certified was not because there could never be a proper class definition, but only that "simply defining a class so as to track the language of Rule 23 . . . does not allow the trial court to readily ascertain the identity of potential class members." *Id.* Here, however, not only do all the class members share the same policy, the common question would

reveal the possibility for a claim against Farmers, or wipe out the possibility of a claim for every class member.

■    The option of bifurcating the trial, certifying the class to determine the common questions, and subsequently decertifying the class for the individualized issues was not the appropriate solution in *Baker v. Wyeth-Ayerst Laboratories Division*, 338 Ark. 242, 992 S.W.2d 797 (1999). However, that case was a complex mass-tort action filed against manufacturers, suppliers, and distributors of certain diet drugs, alleging claims for negligence, products liability, failure to warn, and breach of warranties. *Id.* Appellants in that case argued that common issues such as whether the diet drugs were defective products and whether the defendants gave adequate warning of the risks associated with taking diet drugs, were predominant. *Id.* Unfortunately, while those issues sound common and predominant, the answers to those questions would depend on individual factors such as when each plaintiff took the drug, the duration of use, the quantity of pills each took, the combination of pills each took, each plaintiff's medical history, and how the drugs were marketed to each. *Id.* As previously noted, the common questions in the instant case do not rely on individualized factors, rather they turn on Arkansas law and contract interpretation. The individualized factors, including the factors discussed by appellant's expert, are only relevant to the issue of damages, determining whether or not a certain insured has a valid claim for diminished value and is entitled to that compensation from Farmers.

### c. Superiority

■    Finally, Farmers challenges the class certification on grounds of superiority. Rule 23(b) requires that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy." This court has concluded that a predominating common question in this case is whether Farmers's policy provided for recovery of diminished value. If the trial court should answer this question no, then Farmers is simultaneously relieved of liability to every single class member regarding diminished value. This court had held that "real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary." *Arkansas Blue Cross & Blue Shield v. Hicks*, 349 Ark. 269,

288, 78 S.W.3d 58, 69 (2002) (citing *Williamson, supra*). In *Hicks*, we also noted the following in reviewing a trial court's certification order:

> That is especially so when it is possible that a large number of persons who *may* have legitimate claims not worth pursuing because of the costs of our system of justice may lose those claims if they are not allowed to proceed together as a class. By not certifying a class, a trial court can cause the problem to "go away" to the extreme disadvantage of the claimants unless that decision is reviewable.

*Id.* at 289, 78 S.W.3d at 70 (quoting *Summons v. Missouri Pac. R.R.*, 306 Ark. 116, 128, 813 S.W.2d 240, 246 (1991)) (emphasis in original). As in *Hicks* and *Summons*, this case involves multiple claims that could just "go away," as most of the claims involve small amounts of damages, most of the claimants are average consumers of limited financial means, rather than sophisticated entities, and the claimants are widely distributed throughout the state. If the class is not certified, many of the claimants will lack the knowledge or financial means to proceed against Farmers in individual actions. This consideration alone may not justify class certification, but is a compelling reason to approve it if the other requirements have been met. *Id.*

In conclusion, this court finds that the certified class is susceptible to precise definition, and that the requirements of commonality, predominance, and superiority are also satisfied. Thus, we hold that the circuit court did not abuse its discretion in granting appellee's motion for class certification.

Affirmed.